# United States Court of Appeals
## For the First Circuit

No. 13-1236

LYNNE MACKENZIE and JAMES MACKENZIE,

Plaintiffs, Appellants,

v.

FLAGSTAR BANK, FSB,

Defendant, Appellee,

HARMON LAW OFFICES, P.C.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Marianne B. Bowler, U.S. Magistrate Judge]

Before

Howard, Selya, and Stahl,
Circuit Judges.

Christopher R. Whittingham for appellants.
Carol E. Kamm, with whom Jamie L. Kessler and Donn A. Randall
were on brief, for appellee.

December 30, 2013

**STAHL, <u>Circuit Judge</u>**.    Appellants Lynne and James MacKenzie ("MacKenzies") filed an amended complaint alleging eleven counts of state law violations related to the decisions of Flagstar Bank, FSB ("Flagstar") to deny them a loan modification under the Home Affordable Modification Program ("HAMP") and to foreclose on their home.[1]  The district court dismissed the complaint.  For the following reasons, we affirm.

## I.  Background

The MacKenzies own property located at 277 Williams Street in North Dighton, Massachusetts ("Property").  On May 24, 2007, they gave a promissory note ("2007 Note") in the amount of $275,877.00 at the interest rate of 6.5% to Bankstreet Mortgage, LLC ("Bankstreet") secured by a mortgage on the Property ("2007 Mortgage").  The MacKenzies executed the 2007 Mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for the lender.  The 2007 Mortgage granted the right of assignment and allowed for the severability of the mortgage and the note.

Bankstreet assigned the 2007 Note to Flagstar.  Flagstar signed a Servicer Participation Agreement ("SPA") with Fannie Mae (acting as the agent of the United States Department of Treasury), agreeing to participate in HAMP.  SPAs require loan servicers to

---

[1] Harmon Law Offices, P.C. ("Harmon") was a defendant in the case below, but it is not a party to this appeal.

offer loan modifications and foreclosure prevention services pursuant to HAMP guidelines.

On July 21, 2009, the MacKenzies and Flagstar executed a loan modification agreement ("2009 Agreement") reducing the interest rate to 5.75%, extending the maturity date, and capitalizing unpaid interest to arrive at a principal balance of $279,575.23. The 2009 Agreement identifies the 2007 Mortgage as the contract that it "amends and supplements." On October 31, 2010, the MacKenzies submitted an application to Flagstar for a new modification. Flagstar denied that application on April 14, 2011. On April 19, 2011, the MacKenzies filed another application with Flagstar, this time for a loan modification pursuant to HAMP.

On May 3, 2011, MERS assigned to Flagstar the 2007 Mortgage as modified by the 2009 Agreement. The MacKenzies allege on the basis of a loan investigation that the 2007 Mortgage had been securitized into a Lehman Brothers trust prior to the assignment. On May 11, 2011, Harmon filed a notice with the Commonwealth of Massachusetts Land Court on behalf of Flagstar claiming authority to foreclose on the Property.

Thereafter, Flagstar inexplicably began pursuing two contradictory courses of action. Despite the May 11 notice, on August 31, 2011, Flagstar evaluated the MacKenzies for a loan modification under the HAMP guidelines and determined that they were eligible. Nevertheless, Harmon sent the MacKenzies a notice

of foreclosure sale on October 4, 2011, stating that Flagstar would conduct the sale on or after November 3, 2011. On October 19, 2011, the MacKenzies filed a complaint in the Massachusetts Superior Court seeking injunctive relief to prevent the foreclosure. On November 2, 2011, Flagstar sent the MacKenzies a HAMP modification offer, but still scheduled a foreclosure sale for November 16. On November 8, 2011, Flagstar "closed" the HAMP modification offer.[2] It then removed the pending state court case to federal court on November 14, 2011, on the basis of diversity jurisdiction. To date, as far as the record before us shows, a foreclosure sale has not taken place.

On February 10, 2012, the MacKenzies served Flagstar with a notice to rescind the 2009 Agreement. Flagstar did not accept the notice as a valid recission. The MacKenzies filed an Amended Complaint on February 14, 2012, raising eleven state law claims. Flagstar filed a motion to dismiss and a request for declaratory judgment, and the MacKenzies filed a motion for partial summary judgment. The district court granted the motion to dismiss and

_____

[2] It is not clear from the record if Flagstar "closed" the offer because the MacKenzies rejected it or for some other reason. In the Amended Complaint, the MacKenzies alleged that the written modification offer required them to make a previously undisclosed initial payment of $8,634.58. According to the MacKenzies, "Flagstar maliciously intended that [they] be unable to afford or fulfill the terms of the modification offer with the lump sum payment requirement." These allegations raise the inference that the MacKenzies rejected the November 2 offer because they could not afford the initial payment.

denied the request for declaratory judgment and the motion for partial summary judgment.  The MacKenzies appeal the dismissal.

## II.  Analysis

The MacKenzies state on appeal that they "do not press Counts I, II, III, VI, VIII, and XI."  The remaining counts are breach of contract, based on violations of the implied covenant of good faith and fair dealing (Count IV); violation of the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D, § 10 (Count V); rescission (Count VII); negligence (Count IX); and promissory estoppel (Count X).

## A.        Implied Covenant of Good Faith (Count IV)

In Count IV, the MacKenzies allege that Flagstar "breached the implied obligation of good faith under the agreements," and "breached the implied covenant that neither party shall do anything which will destroy or injure the other party's right to receive the fruits of the contract."  It is not clear on the face of the complaint whether the MacKenzies intended to raise these allegations pursuant to their mortgage with Flagstar or as third-party beneficiaries of the SPA between Flagstar and the federal government.  The MacKenzies do not entirely clarify their position on appeal.  On one hand, they state that they "were third-party beneficiaries of the SPA agreement [between the government] and the servicer, Flagstar."  They rely almost exclusively on In re Cruz, however, in which the court denied injunctive relief as to a

-5-

third-party beneficiary claim but granted it with respect to a claim for breach of good faith, on the basis of the duty mortgagees owe to mortgagors. 446 B.R. 1, 4–5 (Bankr. D. Mass. 2011).

The district court rejected both possibilities. It held that the MacKenzies are not third-party beneficiaries of the agreements between Flagstar and the government. With respect to the mortgage, it found that "Plaintiffs fail to allege any specific duty or right that was violated by Flagstar in the 2009 agreement between [the MacKenzies] and Flagstar." It observed further that "under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults" (internal quotation marks omitted). Instead, a mortgagee's duty of good faith when acting under a "power of sale" generally only extends to "reasonable efforts to sell the property for the highest value possible" (internal quotation marks omitted). Therefore, it concluded that the MacKenzies had not stated a claim for breach of the covenant of good faith and fair dealing.

**1.    Third-Party Beneficiary Claim**

The district court was correct in deciding that the MacKenzies are not third-party beneficiaries of the SPA between Flagstar and the government. It is a well-established principle that "[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental

-6-

beneficiaries [who may not enforce a contract] unless a different intention is manifested."  Restatement (Second) of Contracts § 313 cmt. a (1981); see also Interface Kanner, LLC v. JPMorgan Chase Bank, N.A., 704 F.3d 927, 933 (11th Cir. 2013); Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."); Price v. Pierce, 823 F.2d 1114, 1121 (7th Cir. 1987).

District courts in this circuit, relying on Klamath, have applied this general principle in the specific context of disputes over HAMP modifications and have concluded that borrowers are not third-party beneficiaries of agreements between mortgage lenders and the government.  See Dill v. Am. Home Mortg. Servicing, Inc., 935 F. Supp. 2d 299, 302 (D. Mass. 2013); Teixeira v. Fed. Nat'l Mortg. Ass'n, No. 10-cv-11649, 2011 WL 3101811, at *2 (D. Mass. July 18, 2011) ("Although HAMP was generally designed to benefit homeowners, it does not follow necessarily that homeowners like the plaintiffs are intended third-party beneficiaries of the contracts between servicers and the government."); Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 179-82 (D. Mass. 2011); Blackwood v. Wells Fargo Bank, N.A., No. 10-cv-10483, 2011 WL 1561024, at *6 (D. Mass. Apr. 22, 2011) ("Massachusetts courts have consistently rejected the argument that there is a private right of action under

HAMP by intended third party beneficiaries."); <u>Speleos</u> v. <u>BAC Home Loans Servicing, L.P.</u>, 755 F. Supp. 2d 304, 310 (D. Mass. 2010).

The reasoning of these district courts is persuasive. In <u>Teixeira</u>, the court observed that the SPA in that case "does not give any indication that the parties [to it] intended to grant qualified borrowers the right to enforce the contract." 2011 WL 3101811, at *2. Instead, the SPA "appears to limit who can enforce the contract's terms: 'The Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest.'" <u>Id.</u> The SPA in this case contains identical language. While it is true that intended beneficiaries "need not be specifically named in the contract," they must "fall[] within a class clearly intended by the parties to benefit from the contract." <u>Markle</u>, 844 F. Supp. 2d at 181 (internal quotation marks omitted). The decision of the contracting parties here specifically to identify themselves and their successors as the contract's beneficiaries evinces their intention to exclude third-party beneficiaries. Moreover, as the court in <u>Markle</u> noted:

> If plaintiffs were third-party beneficiaries, every homeowner-borrower in the United States who has defaulted on mortgage payments or is at risk of default could become a potential plaintiff. Finding such a broad and indefinite . . . class of third-party beneficiaries would be inconsistent with the clear intent standard for government contracts set by the Restatement.

<u>Id.</u> at 182.  Thus, the broadly accepted principle set forth in the Restatement, from which we see no reason to deviate, applies squarely to the circumstances of this case and forecloses the MacKenzies' argument that they are third-party beneficiaries of the SPA.[3]

## 2.    Flagstar's Duty of Good Faith as Mortgagee

Despite their explicit claim to be third-party beneficiaries of the SPA, the MacKenzies rely almost entirely on <u>Cruz</u>, in which the court found that borrowers are not third-party beneficiaries of SPAs, but nevertheless found a substantial likelihood that the plaintiff would prevail on his claim for breach of good faith.  446 B.R. at 3-5.  Oddly, the court in that case relied on <u>Speleos</u>, which rejected the good faith claim but allowed a negligence claim to proceed.  755 F. Supp. 2d at 310-12.  The court in <u>Cruz</u> held that the "plaintiff's allegation . . . that Wells Fargo breached its duty of good faith and reasonable diligence is comparable to the negligence claim in <u>Speleos</u>."  446

---

[3]    The MacKenzies point to <u>Parker</u> v. <u>Bank of Am., NA</u>, a Massachusetts state court case that found a borrower to be a third-party beneficiary of an SPA between a mortgagee and the government. No. 11-cv-1838, 2011 WL 6413615, at *7 (Mass. Super. Ct. Dec. 16, 2011).  The court in <u>Parker</u> relied on <u>Marques</u> v. <u>Wells Fargo Home Mortgage, Inc.</u>, a district court case from California that reached the same conclusion.  No. 09-cv-1985, 2010 WL 3212131, at *3 (S.D. Cal. Aug. 12, 2010).  The court in <u>Parker</u> recognized, however, that "every court in the District of Massachusetts (and as far as I know, elsewhere) to consider the issue has rejected the <u>Marques</u> holding."  2011 WL 6413615, at *7.  Given the persuasiveness of the authority to the contrary, the holding in <u>Parker</u> does not change our analysis.

B.R. at 4. The court did not explain, however, how the two claims were comparable.

A more clearly reasoned case that reaches the same conclusion as Cruz is Blackwood. 2011 WL 1561024, at *5. In that case, the court pointed out that "[i]t is familiar law that a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." Id. (quoting W. Roxbury Co-op. Bank v. Bowser, 87 N.E.2d 113, 115 (Mass. 1949)) (internal quotation marks omitted). It decided not to dismiss the breach of good faith claim, because if "the defendants foreclosed when they lacked the legal authority to do so, they acted in violation of their obligation to protect the mortgagor." Id.

The problem with the decision in Blackwood is that "[t]he concept of good faith 'is shaped by the nature of the contractual relationship from which the implied covenant derives,' and the 'scope of the covenant is only as broad as the contract that governs the particular relationship.'" Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013) (quoting Ayash v. Dana–Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005)). Here, the 2007 Mortgage as modified by the 2009 Agreement is the only contract between the MacKenzies and Flagstar. And as the district court correctly pointed out, nothing in the mortgage imposes a duty on Flagstar to consider a loan modification prior to foreclosure in

-10-

the event of a default. See Peterson v. GMAC Mortg., LLC, No. 11-cv-11115, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011) ("Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults." (citing Carney v. Shawmut Bank, N.A., No. 07-P-858, 2008 WL 4266248, at *3 (Mass. App. Ct. 2008))).

It is true that mortgagees have "an independent duty at common law to protect the interests of the mortgagor in exercising a power of sale in a mortgage." Teixeira, 2011 WL 3101811, at *2. "Typically, this entails mak[ing] reasonable efforts to sell the property for the highest value possible." Armand v. Homecomings Fin. Network, No. 12-cv-10457, 2012 WL 2244859, at *5 (D. Mass. June 15, 2012) (alteration in original) (internal quotation marks omitted). Thus, in the event of a foreclosure, the existence of a duty of good faith is tied directly to the mortgagee's contractual right to exercise a power of sale. But the implied covenant of good faith "cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" Young, 717 F.3d at 238 (quoting Ayash, 822 N.E.2d at 684). It would therefore be an error to extend the implied covenant to encompass a duty to modify

(or consider modifying) the loan prior to foreclosure, where no such obligation exists in the mortgage.[4]

Because the MacKenzies are not third-party beneficiaries of the SPA, and because Flagstar had no duty to modify the MacKenzies' loan prior to foreclosure, the district court correctly dismissed Count IV.

**B.        MCCCDA (Count V) and Rescission (Count VII)**

The MCCCDA provides borrowers in certain consumer credit transactions, including the refinancing of a mortgage, with a right of rescission and requires lenders to make certain mandatory disclosures related to the terms of the loan.  Mass. Gen. Laws ch. 140D, § 10.  Section 10(f) of the statute extends the borrower's right of rescission to a period of four years in the event that the lender fails to make the required disclosures.  Id.  The MacKenzies

---

[4] The Plaintiff's argument on appeal appears to conflate the implied convenant of good faith and fair dealing, which attaches to every contract, with the particular duty of a mortgagee to act in good faith and use reasonable diligence in exercising its power of sale.  The two doctrines are distinct and have separate underpinnings.  Compare Sandler v. Silk, 198 N.E. 749, 751 (Mass. 1935) (explaining that the duty of good faith and reasonable diligence "extends . . . not only [to] the mortgagor" but also to "those holding junior encumbrances or liens") with Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005) (noting that the "scope of the covenant [of good faith and fair dealing] is only as broad as the contract that governs the particular relationship").  Although we appreciate this distinction, we nevertheless analyze the issues together because that is how they arose in the context of this case.  In the future, however, we wish to make clear that the better practice is for litigants to acknowledge the distinct nature of each doctrine and present their arguments accordingly.

allege that the 2009 Agreement is a refinancing subject to the terms of the MCCCDA and that Flagstar failed to make the required disclosures.  Accordingly, they seek to exercise their right of rescission within the four-year period under section 10(f).

The district court held that "the 2009 [A]greement . . . does not fall within the provisions of the MCCCDA."  It pointed to section 32.20 of title 209 of the Code of Massachusetts Regulations, which provides that:

> A refinancing occurs when an existing obligation that was subject to 209 CMR 32.00 is satisfied and replaced by a new obligation undertaken by the same consumer.  A refinancing is a new transaction requiring new disclosures to the consumer.  The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation.  The following shall not be treated as a refinancing:
>
> . . .
>
> (b) A reduction in the annual percentage rate with a corresponding change in the payment schedule.
>
> . . .
>
> (d) A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency . . . .

209 Mass. Code Regs. 32.20; see also In re Washington, 455 B.R. 344, 350 (Bankr. D. Mass. 2011) (applying this section of the regulations to the MCCCDA).  The district court found that the 2009 Agreement was not a refinancing because it did no more than lower the interest rate and change the payment schedule.

In their initial brief, the MacKenzies sidestep section 32.20.  They argue instead that the 2009 Agreement is not exempt from disclosure requirements under section 10(e)(1)(B) of chapter 140D of the Massachusetts General Laws, which excludes refinancings from the purview of the MCCCDA under certain circumstances.  That argument is beside the point.  As the district court held, the modification was not a refinancing and, thus, section 10(e)(1)(B) does not apply.  In their reply brief, however, the MacKenzies contend that the 2009 Agreement was a refinancing because in addition to lowering the interest rate and extending the payment schedule, it involved a new lender and a new amount of principal.  But these points do not undermine the district court's decision.

First, Flagstar is not a "new lender"; it is the assignee of Bankstreet, the original lender.  It is axiomatic that an "assignee 'stands in the shoes' of the assignor." R.I. Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co., 789 F.2d 74, 81 (1st Cir. 1986) (quoting 10 W. Jaeger, Williston on Contracts § 432, at 182 (3d ed. 1967)).  Through the assignment, Flagstar obtained Bankstreet's rights and obligations under the existing mortgage, including the right to reach an agreement with the MacKenzies to modify the terms of the loan.  See Bank of Am., N.A. v. WRT Realty, L.P., 769 F. Supp. 2d 36, 39 (D. Mass. 2011) (holding that the assignee of a note and mortgage "enjoys all rights the assignor possessed").  The fact that Flagstar exercised that right does not mean that the

"existing obligation . . . [was] satisfied and replaced by a new obligation."  209 Mass. Code Regs. 32.20

Second, the change in the amount of principal was the result of the capitalization of unpaid interest.  In other words, the entire principal balance under the 2009 Agreement was debt owed under the original mortgage; it was not a new obligation replacing the original obligation.  See Sheppard v. GMAC Mortg. Corp., 299 B.R. 753, 762–64 (Bankr. E.D. Pa. 2003) (holding that the capitalization of unpaid debt does not constitute a refinancing under the Truth In Lending Act, 15 U.S.C. §§ 1601–1667f, on which the MCCCDA is modeled, because the new obligation did not completely replace the old one).

Thus, under the terms of section 32.20, the 2009 Agreement is not a refinancing.  It is not subject to the disclosure requirements of the MCCCDA, and the MacKenzies have no right to rescind it under the statute.  Therefore the district court properly dismissed Counts V and VII.

C.        **Negligence (Count IX)**

In Count IX, the MacKenzies claim that Flagstar "owed [them] a duty . . . as third-party beneficiaries of the [SPA] between a loan servicer and the federal government," and that Flagstar "breached their obligations under the HAMP and other related government programs which the SPA incorporates."  To state a claim for negligence under Massachusetts law, a plaintiff must

allege: "(1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." Primus v. Galgano, 329 F.3d 236, 241 (1st Cir. 2003) (internal quotation marks omitted). The district court correctly concluded that the MacKenzies' allegations fall short because as a matter of law Flagstar does not owe the MacKenzies any legal duty under the circumstances of this case.

As we have said above, the MacKenzies are not third-party beneficiaries of the SPA between Flagstar and the government. Therefore, they cannot base their negligence claim on that argument. The MacKenzies appear to argue in the alternative that violations of HAMP give rise to a claim for negligence per se. That argument fails as well.

"Generally, a duty of care arises from the relationship of parties to one another: landlord and tenant, doctor and patient, driver and passenger, etc." Brown v. Bank of Am. Corp., No. 10-cv-11085, 2011 WL 1311278, at *4 (D. Mass. Mar. 31, 2011). The relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law. See Corcoran v. Saxon Mortg. Servs., Inc., No. 09-cv-11468, 2010 WL 2106179, at *4 (D. Mass. May 24, 2010) ("[A] lender owes no general duty of care to a borrower."); Murray v. Am.'s Servicing Co., No. 200701716, 2009 WL 323375, at *5 (Mass. Super. Ct. Jan. 12, 2009). "[T]he existence of a positive regulation imposing a duty on one actor does not by

itself create a similar duty as a matter of state tort common law." Brown, 2011 WL 1311278, at *4.

The MacKenzies correctly point out that "violations of a statute may constitute evidence of negligence," and that "[a] claim for negligence based on a statutory or regulatory violation can survive even where there is no private cause of action under that statute or regulation." Both of those propositions are true, but neither directly addresses the dispositive issue here: statutory or regulatory violations cannot give rise to a negligence claim when there is no independent duty of care between the parties. See Seidel v. Wells Fargo Bank, N.A., No. 12-cv-10766, 2012 WL 2571200, at *4 (D. Mass. July 3, 2012) ("HAMP . . . does not create an independent duty for mortgag[ee]s where no other basis for that duty exists. Thus, plaintiff's claim for negligence fails . . . .") (internal citations omitted); Brown, 2011 WL 1311278, at *4 ("[W]hile violation of a regulation such as HAMP may provide evidence of a breach of a duty otherwise owed, it does not create such a duty in the first place."); Markle, 844 F. Supp. 2d at 185. Where an independent duty of care exists, the violation of a statute or regulation can provide evidence of a breach of that duty, even if the statute or regulation itself does not create a private right of action. But in the absence of an independent duty, a plaintiff cannot proceed with a negligence claim based

-17-

solely on a statutory or regulatory violation.  Thus, the district court properly dismissed Count IX.

**D.        Promissory Estoppel (Count X)**

In Count X, the MacKenzies allege that "Borrowers and Flagstar entered into an agreement that a foreclosure sale could be conducted according to the terms of the Power of Sale in the 2009 Mortgage Loan and/or the 2007 Deed of Trust."  According to the MacKenzies, "[i]mplicit in these contracts is an agreement by Flagstar that all documents recorded by Flagstar relative to the 2007 Deed of Trust or the 2009 Mortgage Loan shall be free from fraud and shall be reliable."  The MacKenzies claim that they "relied on this promise of Flagstar to their detriment, and have been damaged as a result of the failure of the [sic] Flagstar to keep its promise."

Under Massachusetts law, to state a claim for promissory estoppel "a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise."  <u>Dill</u>, 935 F. Supp. 2d at 304 (internal quotation marks omitted).  The district court dismissed Count X, finding that the MacKenzies had recited the elements of a promissory estoppel claim, but had "fail[ed] to articulate the facts to support th[ose]

elements." Specifically, "Plaintiffs fail[ed] to identify the particular promise that they relied upon and the manner in which such reliance was to their detriment."

Looking solely at the Amended Complaint, the district court's decision is plainly correct. These allegations are a textbook illustration of the type of "formulaic recitation of the elements of a cause of action" that falls below the standard of Federal Rule of Civil Procedure 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On appeal, however, the MacKenzies try to recharacterize their claim. Rather than focusing on implicit contractual promises not to engage in fraud, they now argue that Flagstar "engag[ed] in a course of conduct them [sic] for over two years leading them to believe that the result would be a HAMP modification." According to the MacKenzies, they "detrimentally relied upon Flagstar's promises by, in part, awaiting determination of HAMP eligibility and loan modification" instead of "seek[ing] alternatives to foreclosure."

"[I]t is a virtually ironclad rule that a party may not advance for the first time on appeal either a new argument or an old argument that depends on a new factual predicate." Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003). But even considering these new arguments on their own terms, they fare no better than the allegations below.

The MacKenzies claim that "Flagstar strung [them] along . . . from October 2009 through the fall of 2011 only to present them with an offer just days before the foreclosure sale," thereby creating a "reasonable expectation" that Flagstar would modify the loan instead of pursuing foreclosure. These circumstances, the MacKenzies argue, are similar to those in Dixon v. Wells Fargo Bank, N.A., where the district court allowed a promissory estoppel claim to survive a motion to dismiss. 798 F. Supp. 2d 336, 340–52 (D. Mass. 2011). Dixon is distinguishable from the present case, however.

In Dixon, "Wells Fargo convinced the Dixons that to be eligible for a loan modification they had to default on their [mortgage] payments." Id. at 346. But once the Dixons defaulted, instead of modifying the loan, the bank initiated foreclosure without any warning. Id. at 339. "[I]t was only because they relied on this representation and stopped making their payments that Wells Fargo was able to initiate foreclosure proceedings." Id. at 346. Thus, in that case, the plaintiffs alleged both a "specific promise" and a "legal detriment that . . . was a direct consequence of their reliance on [that] promise." Id. at 343.

Here, the MacKenzies have done neither. The fact that Flagstar considered the MacKenzies for a loan modification multiple times over a two-year period is not a promise, implicit or otherwise, to consider them for further loan modifications prior to

-20-

initiating foreclosure. Moreover, the MacKenzies' argument ignores that Flagstar did in fact offer them a loan modification under HAMP on November 2, 2011, which they apparently rejected because they could not afford the initial payment. Thus, even if Flagstar had made an implicit promise to offer them a loan modification, it appears to have fulfilled that promise.

Additionally, the MacKenzies have not alleged any facts that would allow us to infer that their decision not to seek "alternatives to foreclosure" was detrimental to them. In other words, there is no reason for us to believe the MacKenzies would have successfully avoided foreclosure, or been better off in any way, but for their reliance on Flagstar's supposed promise to consider them for a loan modification. Therefore, the MacKenzies have failed to adequately plead the elements of a promissory estoppel claim, and the district court correctly dismissed Count X.

**E.       Validity of the Mortgage Assignment to Flagstar**

The MacKenzies' final argument asserts that they "have standing to challenge Flagstar's authority to foreclose on their home" under Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282 (1st Cir. 2013). They claim that "the trust into which the 2007 Mortgage Loan was sold and securitized has since been [d]issolved. Consequently, . . . MERS had nothing to assign to Flagstar on [the] date of the assignment." The MacKenzies conclude that "[b]ecause Flagstar received nothing from the assignment it

has no authority to commence foreclosure proceeding[s] on the MacKenzies' home."

The MacKenzies are correct that <u>Culhane</u> supports their standing to challenge the assignment of the mortgage. The plaintiff in <u>Culhane</u>, however, challenged the assignment under Massachusetts General Laws chapter 183, section 54B. <u>Id.</u> at 293-94. Here, the factual allegations related to purported defects in the assignment are not tethered to any legal claim before us on appeal. In the amended complaint, these allegations appeared in the context of the MacKenzies' claim for fraud (Count I) and perhaps (it is not entirely clear) the claim for violations of Massachusetts General Laws chapter 93A (Count III). The MacKenzies chose not to pursue those claims on appeal. It is not apparent that these allegations are relevant to any of the remaining counts.

At oral argument, counsel for the MacKenzies attempted to find a home for these orphaned allegations by suggesting that they are related to the negligence claim. But the MacKenzies premise their negligence claim on Flagstar's alleged failure to follow HAMP guidelines, not on any defects in the assignment. Furthermore, for the reasons discussed above, the negligence claim fails because Flagstar does not owe a duty of care to the MacKenzies. Thus, even accepting as true the MacKenzies' allegations regarding the defective assignment, we would not be able to grant any relief,

because the MacKenzies have not preserved on appeal any legal theory on which they might recover.

### III.  Conclusion

For the foregoing reasons, we <u>affirm</u> the district court's dismissal of the amended complaint.