Fed. Nat'l Mortg. Ass'n. v. Moyher et. al., No. 102-2-13 Wmcv (Wesley, J. Mar. 11, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT**<br>**Windham Unit** | **CIVIL DIVISION**<br>**Docket No. 102-2-13 Wmcv** |

| | |
|---|---|
| **Federal National Mortgage Association,**<br>**Plaintiff.**<br><br>**v.**<br><br>**Carolyn Moyher, a/k/a Carolyn C. Moyher**<br>**and Paul Moyher, a/k/a Paul F. Moyher,**<br>**Defendants.** | |

### Decision and Order Denying Plaintiff's Motion to Dismiss Counterclaims

Background

Plaintiff, FannieMae, seeks to foreclose on Defendants' property. Plaintiff alleges First Horizon Home Loan Corporation lent Defendants $165,000 to buy a home. In return, Defendants gave First Horizon a promissory note and signed a mortgage in favor of Mortgage Electronic Registration Systems (MERS). MERS assigned the mortgage to First Horizon. Plaintiff has possession of the mortgage and note and has the right to enforce them.[1] Defendants failed to make payments on the mortgage and note. Therefore, Plaintiff asserts claims for foreclosure of real property, breach of contract, and a deficiency judgment.

Defendants counterclaim for consumer fraud, breach of contract, and promissory estoppel. Defendants assert they participated in a trial payment plan offered under the Home Affordable Modification Program (HAMP). Defendants provided required information and made payments for over one year. Eventually, a servicer to the loan refused to accept payments and claimed Defendants had not been approved for a loan modification. Defendants allege they suffered damages from accruing additional interest, paying attorney's fees, not placing their home for sale, and emotional distress.

On January 16, 2014, Plaintiff filed a motion to dismiss counterclaims. Plaintiff argues it cannot be liable for consumer fraud because First Horizon oversaw the trial payment plan and the Vermont Consumer Fraud Act does not allow for derivative liability. Plaintiff also states in cannot be liable for breach of contract because there was no agreement for a loan modification. Finally, promissory estoppel is not appropriate because the trial payment plan did not promise approval for a final loan modification.

On February 10, 2014, Defendants opposed Plaintiff's motion to dismiss counterclaims. Defendants argue Plaintiff is liable for consumer fraud because First Horizon was its loan

---

[1] Plaintiff's pleadings do not clarify the relationship between First Horizon and Plaintiff. From Defendants' pleadings, it appears First Horizon is an agent of Plaintiff. The parties do not dispute that Plaintiff has the right to enforce the note.

servicing agent, which places the two in a principle/agent relationship. Further, Plaintiff breached its contract by not making an offer of a permanent modification to an eligible borrower who completed the trial payment plan. Finally, promissory estoppel is appropriate because the HAMP guidelines indicate a borrower will receive a permanent modification if the borrower completes the trial payment plan.

Standard of Review

The Court disfavors and rarely grants motions to dismiss. *See Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. The Court uses motions to dismiss to evaluate the law in a pleading. *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002). Accordingly, the Court will only grant a motion to dismiss when there are "no facts or circumstances, consistent with the complaint that would entitle Plaintiff to relief." *Bock*, 2008 VT 81, ¶ 4. For this motion, the Court assumes the truth of all facts offered by the non-moving party. *Id.*

Discussion

1. *Consumer Fraud*

Under 9 V.S.A. § 2461(b) a consumer who suffers damages from fraudulent practices may sue to recover. A consumer may seek compensation from a seller who uses "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). To bring a claim under the Consumer Fraud Act, a party must meet three requirements. *Madowitz v. The Woods at Killington Owners' Ass'n*, 2014 VT 21, ¶ 23. "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." *Id.* (quoting *Carter v. Gugliuzzi*, 168 Vt. 48, 56 (1998)).

Plaintiff maintains it cannot be liable for consumer fraud because Vermont does not allow derivative liability on consumer fraud claims. *See State v. Stedman*, 149 Vt. 594, 598–99 (1988). In *Stedman*, the State sued for consumer fraud against the owner of a ski mountain and a real estate developer. *Id.* at 595. The developer operated the ski mountain for a season under a lease agreement and sold time shares to consumers. *Id.* at 596. The developer promised a money-back guarantee on the time shares. *Id.* After the season, the ski area closed and the developer did not refund the deposits of the consumers. *Id.*

The Vermont Supreme Court affirmed dismissal of the consumer fraud claims against the owners of the ski mountain. *Id.* at 598. The Court observed consumer fraud cannot be applied "absent direct participation in the unfair or deceptive acts, direct aid to the actor, or a principal/agent relationship." *Id.* Nothing suggested the owners operated as principals for the developer's action. *Id.* Therefore, no liability could run to the owners. *Id.*

In this case, Defendants assert sufficient facts to establish a principal/agent relationship between Plaintiff and First Horizon, taking the allegations as true. *See id.* A principal is liable for the acts of an agent where the agent acts with actual authority or where the principal ratifies

the acts of the agent. *Restatement (Third) of Agency* §§ 7.03, 7.04; *see also In re Porter*, 2012 VT 97, ¶ 14, 192 Vt. 601 (citing the Restatement). Here, Defendants allege First Horizon had authority to act on behalf of Plaintiff to service the mortgage. Although the nature of the relationship between First Horizon and Plaintiff remains unclear, the Court accepts this representation in a motion to dismiss. *See Bock*, 2008 VT 81, ¶ 4. A consumer may sue a principal for the actions of an agent. *See Stedman*, 149 Vt. at 598. Therefore, the Court denies the motion to dismiss the claim for consumer fraud. *See id.*

Plaintiff's next argue that there is no deceptive act to support a claim for consumer fraud. Courts in other jurisdictions have considered suits by borrowers against lenders for alleged violations of the trial payment plans. *See, e.g.*, *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 234 (1st Cir. 2013); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012). In *Wigod*, a borrower sued her lender for not modifying a loan under HAMP. *Id.* at 554–55. The borrower sought recovery under the Illinois Consumer Fraud Act, breach of contract, and promissory estoppel. *Id.* at 555. The borrower claimed the lender agreed to participate in a modification program, led the borrower to believe the loan would be modified if she completed a trial payment program, and later refused to make a permanent modification. *Id.* The lender moved to dismiss under F.R.C.P. 12(b)(6). *Id.* at 555–56.

The Seventh Circuit evaluated the borrower's claims for fraud under the Illinois Consumer Fraud Act. *Id.* at 574. Illinois penalizes "unfair or deceptive acts or practices." *Id.* The borrower in *Wigod* alleged the lender improperly implemented HAMP and dishonestly led her to participate in the trial payment plan. *See id.* at 574–75. The borrower also paid additional fees to participate in the trial program, lost the opportunity for other remedial measures by turning over the property, and suffered negative impacts on her credit. *Id.* at 575. The Seventh Circuit found the borrower's claims of being misled by the lender's representations were sufficient to survive a motion to dismiss on the consumer fraud claims. *Id.* at 575–76.

In this case, Defendants' pleadings taken as true show a deceptive act. Defendants plead Plaintiff had a practice of participating in HAMP and offering trial payment plans without offering qualified borrowers permanent modifications. *See Madowitz*, 2014 VT 21, ¶ 23. As in *Wigod*, the Defendants claim they incurred additional fees, delayed selling the home, and suffered emotional distress as a proximate result of Plaintiff's fraudulent behavior. *See* 673 F.3d at 575. For a motion to dismiss, Defendants assertions are adequate to show consumer fraud. *See id.*; *see also Bock*, 2008 VT 81, ¶ 4 (noting the notice standard on motion to dismiss). The Court denies the motion to dismiss Defendants' counterclaim for consumer fraud.

2. *Breach of Contract*

The next issue is whether Defendants may assert a counterclaim for breach of contract based on Plaintiff's alleged failure to offer a permanent modification after Defendants completed the trial payment plan. Defendants allege they never received signed versions of the trial payment plan and did not receive a permanent modification. Nevertheless, Defendants claim they presented all required information and made the necessary payments for over a year. Defendants also observe that Plaintiff's own guidelines do not require a borrower to return signed versions of the agreements if they otherwise comply with trial period plan. *See* FrannieMae, *Announcement*

*09-31: Amends These Guides: Servicing, Updates and Clarifications to the Home Affordable Modification Program* (November 2, 2009), *available at* https://www.fanniemae.com/content/announcement/0931.pdf. Plaintiff asserts there can be no breach of contract because there was no agreement.

Again, *Wigod* provides helpful guidance. *See* 673 F.3d at 561.The Seventh Circuit considered the borrower's claim for breach of contract. *Id.* at 560. The court noted the trial payment plan required a permanent offer if the borrower made all of the payments and made true disclosures. *Id.* The lender argued the trial payment plan was not an offer because it required further review by the lender. *Id.* at 561. The court noted conditional contracts can be enforceable when the parties meet the conditions. *See id.* at 561–52. Moreover, the qualifying language allowed the lender some discretion in crafting the offer for a permanent modification, but required the lender to make a good faith offer. *See id.* at 562.

The Court finds the Seventh Circuit's reasoning persuasive. *See id.* Plaintiff engaged Defendants in a trial payment plan. Defendants submitted information and made payments under that plan for over a year. Although Plaintiff had discretion in drafting a permanent offer, Plaintiff cannot create trial payment plan and then refuse to offer a permanent modification arbitrarily after Defendants fully complied with the payment plan. Plaintiff's failure to provide Defendants with all of the necessary documentation does not allow them to claim a contract never existed. Moreover, Plaintiff's guidelines indicate they will allow borrowers to receive a permanent modification without returning the signatures if the borrower provides the relevant information and makes all payments. *See* FrannieMae, *Announcement 09-31.* The Court will therefore deny the motion to dismiss on the breach of contract.

3. *Promissory Estoppel*

Finally, Defendants' claim for promissory estoppel based on Plaintiff's failure to offer a permanent modification after Defendants completed the trial payment plan is also sufficiently supported by the pleadings.. In Vermont, a party may claim promissory estoppel if the party detrimentally and reasonably relies on the representations of another. *See Fisher v. Poole*, 142 Vt. 162, 168 (1982). *Wigod* applied the doctrine of promissory estoppel in the context of a trial payment plan. 673 F.3d at 566. As in Vermont, a party seeking promissory estoppel must show detrimental and reasonable reliance on a representation. *See id.* The court found the borrower made a valid claim for promissory estoppel because the lender engaged her in a trial payment plan, she made payments and did not pursue other options, and the lender ultimately refused to offer a permanent modification. *Id.*

In this case, Defendants allege sufficient facts to assert a claim for promissory estoppel. Specifically, Defendants assert Plaintiff represented the loan would be permanently modified if Defendants successfully completed the trial payment plan. Defendants then gave Plaintiff the requested information and made trial payments for over a year. In doing so, Defendants made payments, incurred fees, and did not place their house for sale. Defendants reasonably relied on the statements made by Plaintiff and its agents and took actions on the basis of those representations. *See Fisher*, 142 Vt. at 168. The situation is similar to *Wigod*, where the borrower

participated in a plan, did not pursue other options, and ultimately did not receive a permanent offer. *See* 673 F.3d at 566. These allegations plead a cause of action for promissory estoppel.

Plaintiff's argument that the reasoning *MacKenzie v. Flagstar Bank, FSB* indicates promissory estoppel is not appropriate is unpersuasive. *See* 738 F.3d 486, 496–97 (1st Cir. 2013). In *MacKenzie*, borrowers sued a lender for foreclosing on their home after the lender determined the borrowers were eligible for a HAMP modification. *Id.* at 789–90. The borrowers did not have a chance to participate in a trial payment plan and sued under HAMP. *See id.* The First Circuit determined promissory estoppel was not appropriate because consideration of a modification is not an offer that can generate reasonable reliance. *See id.* at 497.

*MacKenzie* is distinguishable from this case.[2] In this case, unlike *MacKenzie*, the borrowers completed a trial payment plan. *See id.* at 496–97. That is, the lender made a conditional offer and the borrower fulfilled the conditions. As explained by *Wigod*, once the borrower completed the trial payment plan, the lender should have offered a permanent modification with terms that were similar to the trial payment plan. *See* 673 F.3d at 562. *MacKenzie* does not undermine the Court's reasoning in regard to the promissory estoppel claim and the Court will deny the motion to dismiss.

## Order

The Court **DENIES** Plaintiff's motion to dismiss Defendant's counterclaims.

Dated and signed electronically at Newfane, Vermont on March 10, 2014.

_____
John P. Wesley
Superior Court Judge

---

[2] *MacKenzie* is also distinguishable on procedural grounds. In federal courts, the standard of review in a motion to dismiss comes from *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See MacKenzie*, 738 F.3d at 496. The First Circuit noted reciting the elements of a cause of action is not sufficient to survive a motion to dismiss under the federal pleading standard. *Id.* Vermont has not adopted the more stringent pleading standards in federal courts required by *Twombly*. *See Bock*, 2008 VT 81, ¶ 5, fn.; *see also Iqbal*, 556 U.S. at 667 (using *Twombly* as the standard for a motion to dismiss). Even if this Court applied the reasoning of *MacKenzie*, then Defendants would survive a motion to dismiss because of Vermont's notice pleading standard. *See Bock*, 2008 VT 81, ¶ 4 (noting Vermont's notice pleading standard imposes an "exceedingly low" burden).

5