# United States Court of Appeals
## For the First Circuit

Nos. 13-1726; 13-1736

BRUCE M. COOPER; JOHN W. ROMITO; ROY L. BAKER;
WHITNEY TAYLOR THOMPSON, individually and on behalf of all other
persons similarly situated,

Plaintiffs, Appellants,

v.

CHARTER COMMUNICATIONS ENTERTAINMENTS I, LLC;
CHARTER COMMUNICATIONS, INC.,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Thompson, Stahl, and Kayatta,
Circuit Judges.

Jeffrey S. Morneau, with whom Nathan A. Olin and Connor,
Morneau & Olin, LLP, were on brief, for appellants.
Robert J. Wagner, with whom Kathleen M. Guilfoyle, Brian
P. Voke, Campbell Campbell Edwards & Conroy, Roman P. Wuller, and
Thompson Coburn, LLP, were on brief, for appellees.

July 23, 2014

**KAYATTA, Circuit Judge.** In the aftermath of a substantial snowstorm, four customers sued cable provider Charter Communications Entertainment I, LLC, and its parent company, Charter Communications, Inc. (collectively, "Charter"), on behalf of themselves and a putative class of others claimed to be similarly situated. The plaintiffs contend that Charter violated contractual, statutory, and common law duties by failing to provide credits to its customers for their loss of cable, internet, and telephone service during the storm. We hold that the district court properly exercised its jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), but erred in granting Charter's motion to dismiss. We therefore vacate in part the district court's opinion and remand for further proceedings.

## I.  Background

Except where otherwise noted, the facts in this opinion are taken from the plaintiffs' complaint, with all reasonable inferences drawn in the plaintiffs' favor. See Maloy v. Ballori-Lage, 744 F.3d 250, 251 (1st Cir. 2014). We bear in mind, however, that in assessing jurisdictional issues, we must weigh the evidence without favoring either party. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 364 (1st Cir. 2001).

Plaintiffs Bruce Cooper, John Romito, Roy Baker, and Whitney Taylor Thompson are residents of Massachusetts who purchase cable television, internet, or telephone services from Charter.

The district court has not yet considered any motion for class certification, so for now they are the only plaintiffs.

Beginning on October 29, 2011, Massachusetts experienced a severe snow storm that damaged trees, made travel impossible on many roads, and took down power and cable lines. During the storm, the plaintiffs did not receive services from Charter, either because they lost electrical power and therefore could not use television or internet devices, or because Charter's own equipment failed to provide service even where power was available, or due to some combination of the two.

Cooper, Romito, and Baker filed the complaint in this case in Massachusetts state court on November 22, 2011. Two weeks later, having not yet served the complaint on Charter, the plaintiffs' attorneys sent the company a demand letter seeking relief on behalf of the three original plaintiffs and others similarly situated. This letter was later incorporated into the plaintiffs' first amended and second amended complaints, the latter of which is the operative complaint here. The demand letter specified when the three customers' services were interrupted. According to the letter, for example, Cooper and Baker lost service at 6:00 pm on October 29, 2011, and did not receive it again until 3:00 pm on November 7, 2011. As to Thompson, who was added as the fourth plaintiff after the demand letter was sent, the record contains no information regarding when her service was interrupted,

aside from the allegation in the amended complaint that her interruption lasted more than twenty-four consecutive hours.

A month after receiving the plaintiffs' demand, Charter sent a letter to their attorneys, informing them that Charter had issued credits to the accounts of Cooper, Baker, and Romito, which the company said fully compensated them for the time they were without service.

After the first amended complaint was served on Charter in February 2012, the company removed the case to federal court, invoking the Class Action Fairness Act. Charter then filed a motion to dismiss, asserting that the plaintiffs' claims were moot and that the complaint failed to state a claim. See Fed. R. Civ. P. 12(b)(1), (b)(6). The district court ruled that removal was proper and granted Charter's motion to dismiss. The court found that the claims of Cooper, Baker, and Romito were moot because they had received credits covering the time they were without service. The court also found that, as to the fourth plaintiff, Thompson, the complaint failed to state a claim. This appeal followed.

## II.  Legal Standard

This case presents two threshhold jurisdictional questions: whether the district court had subject matter jurisdiction under the Class Action Fairness Act and whether the plaintiffs' claims are moot. We review both questions de novo. See Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 48 (1st

-4-

Cir. 2009); <u>Anderson ex rel. Dowd</u> v. <u>City of Boston</u>, 375 F.3d 71, 80 (1st Cir. 2004).  However, where the district court's assessment of a jurisdictional issue turns on findings of fact, we accept those findings unless they are clearly erroneous.  <u>Amoche</u>, 556 F.3d at 48; <u>Valentin</u> v. <u>Hosp. Bella Vista</u>, 254 F.3d 358, 365 (1st Cir. 2001).

As to Charter's motion to dismiss for failure to state a claim, we also review de novo.  <u>Maloy</u> v. <u>Ballori-Lage</u>, 744 F.3d 250, 252 (1st Cir. 2014).  We ask "whether the complaint 'state[s] a claim to relief that is plausible on its face,' accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor."  <u>Id.</u> (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007)).  "To cross the plausibility threshhold, the plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  <u>Id.</u> (quoting <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678 (2009)).

### III.  Analysis

**A.  Jurisdiction under the Class Action Fairness Act**

Charter invokes federal jurisdiction under the Class Action Fairness Act.  The Act grants jurisdiction to federal courts to hear state-law class actions if there is minimal diversity of citizenship between the parties, as the parties agree there is

here, and the amount in controversy exceeds five million dollars.[1] 28 U.S.C. § 1332(d)(2). Here, although a class has not been certified, the district court properly treated the complaint as asserting a class action, and therefore went on to consider the size of the proposed class and the potential recovery. See College Of Dental Surgeons Of Puerto Rico v. Connecticut Gen. Life Ins. Co., 585 F.3d 33, 40 (1st Cir. 2009) ("CAFA . . . applies 'to any class action before or after the entry of a class certification order by the court with respect to that action.'" (quoting 28 U.S.C. § 1332(d)(8))). The party asserting jurisdiction bears the burden to show with a "reasonable probability" that the amount in controversy requirement is satisfied. Amoche v. Guarantee Trust Life Co., 556 F.3d 41, 48-49 (1st Cir. 2009).

The parties agree that for purposes of calculating the amount in controversy, the plaintiffs seek at least $75 for each member of the proposed class. The parties also agree that approximately 95,000 Charter customers lost power during the storm. The company provided that estimate in an affidavit, and the plaintiffs then incorporated the figure into their own complaint, characterizing it as a minimum number of affected customers. The complaint asserts that all of these customers failed to receive

---

[1] The diversity requirement, which is not at issue here, requires at least one plaintiff to be a citizen of a different state than at least one defendant, subject to certain exceptions. See 28 U.S.C. § 1332(d)(2), (4), (5), and (9).

services from Charter, and the plaintiffs have offered no reason to exclude any of those affected from their proposed class.

With a putative class of at least 95,000 people, and possible damages of at least $75 per class member, the amount in controversy is at least $7,125,000. The district court's exercise of jurisdiction was therefore proper.

## B. Mootness

Charter contends that the claims of Cooper, Baker, and Romito became moot when, after this suit was filed, they accepted credits proportional to the time they were without service.[2] There is no dispute that Thompson's claims remain live.

The dispute between the plaintiffs and Charter focuses on whether and when Charter must provide a credit or rebate to any subscriber whose service is interrupted. The plaintiffs say that the service outages in October and November of 2011 triggered a duty to provide credits or rebates under Mass. Gen. Laws ch. 166A, § 5(*l*), and under Charter's licensing agreements. Importantly, they also claim that Charter was obligated to provide those rebates or credits to each affected customer without waiting to first receive a request from that customer. Charter rejects both contentions.

---

[2] Charter presents its argument as a claim of mootness rather than a challenge under the related doctrine of standing, a characterization we accept because Charter did not give the plaintiffs a credit until well after this lawsuit was filed. See Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006).

-7-

Yet, the plaintiffs have not contested that Cooper, Baker, and Romito accepted credits from Charter proportional to the time they were without service. And although the plaintiffs allude to the existence of other types of damages they might have suffered, they fail to identify any such damages, even by type or category. In short, the individual damages claims of these three putative class representatives were fully satisfied after they filed this action. Consequently, they also may not receive statutory or treble damages under the Massachusetts unfair business practices law, which makes such relief available only where a defendant has failed to offer a settlement "reasonable in relation to the injury actually suffered." See Mass. Gen. Laws ch. 93A, § 9(3).[3]

Were the three original plaintiffs seeking only monetary damages, and were Thompson not joined as a plaintiff, the foregoing chronology would present complicated issues of standing and mootness in the context of a putative class action. See, e.g., Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1529-32 (2013) (analyzing the viability of a collective action under the

---

[3] The plaintiffs do not contest that Charter complied with the formal requirements for a settlement under Chapter 93A when it credited their accounts and informed them in writing that it had done so. Whether the plaintiffs may be able to recover at least partial attorneys' fees and costs under the Massachusetts unfair business practices law, see Mass. Gen. Laws ch. 93A, § 9(4), we leave to the district court to consider if and when the time is right.

Fair Labor Standards Act, after assuming that the plaintiff's individual damages claim was moot). In this case, though, the plaintiffs also seek a declaration that Massachusetts law and Charter's licensing agreements require the company to pay credits without request. See 28 U.S.C. § 2201 (allowing federal courts to issue declaratory relief). Charter avows no agreement with the plaintiffs' interpretation of Charter's duties under either Massachusetts law or under the licensing agreements. Indeed, Charter has made clear that it gave credits to the plaintiffs under a policy it adopted "voluntarily," which was limited to this storm, and which, according to Charter, "exceed[ed] requirements under the law."

Charter also fails to argue that the request for declaratory relief is itself either moot or unripe. Nor would it appear unlikely that the New England weather will produce another severe winter storm, as evidenced by the fact that Massachusetts passed a law to address the situation in the first place. In these circumstances, we find the dispute between the plaintiffs and Charter about the extent of Charter's duties to the plaintiffs under Massachusetts law and its licensing agreements to be live and proper for judicial consideration. See Already, LLC v. Nike, Inc., 133 S. Ct. 721, 727 (2013) (holding that a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to

recur" when it claims that its own voluntary conduct has made a plaintiff's claim moot (internal quotation marks omitted)); <u>Knox</u> v. <u>Service Employees Int'l Union, Local 1000</u>, 132 S. Ct. 2277, 2287 (2012) (finding no mootness where the defendant union had offered a full refund of money the plaintiffs claimed was collected unlawfully because "the union continue[d] to defend the legality" of its action, making it "not clear why the union would necessarily refrain from collecting similar fees in the future").[4]

All four plaintiffs therefore may pursue their unrequited requests for declaratory relief regarding their present dispute with Charter over the nature of its obligations to them. And Thompson has an unsatisfied damages claim to pursue as well.

## C. Failure to State a Claim

Each of the plaintiffs' claims arises under Massachusetts statutory or common law, and so we look to that law in assessing the plausibility of their claims. <u>See</u> <u>Daigle</u> v. <u>Maine Med. Ctr.</u>, Inc., 14 F.3d 684, 689 (1st Cir. 1994).

---

[4] In these respects, this case is easily distinguishable from <u>American Civil Liberties Union of Massachusetts</u> v. <u>United States Conference of Catholic Bishops</u>, 705 F.3d 44 (1st Cir. 2013), on which the district court relied. There, the plaintiffs sought a declaration that a government contract violated the Establishment Clause, but the contract had already expired and had been replaced, so the court could "safely assume that for the foreseeable future the challenged contract terms will not recur." <u>Id.</u> at 56.

-10-

With one exception, the plaintiffs' claims revolve around a provision in Massachusetts law requiring that:

> In the event a license is issued [to provide cable service], each licensee shall agree to the following: . . . (*l*) In the event its service to any subscriber is interrupted for twenty-four or more consecutive hours, it will grant such subscriber a pro rata credit or rebate.

Mass. Gen. Laws ch. 166A, § 5.

Charter has indeed included such language in its licensing agreements, almost verbatim, albeit with the presumably reasonable limiting gloss that credits or rebates need be provided only when "the interruption was not caused by the Subscriber and the Licensee knew or should have known of the service interruption."

The parties dispute how to interpret the statute's language, and thus the nearly identical language of the licensing agreements. Charter asserts that the statutorily-mandated language only requires the company to provide credits or rebates to subscribers who ask for them. We reject this claim as inconsistent with the statute's actual language. The language imposes no such limitation, instead flatly imposing a duty to provide a credit or rebate to any subscriber whose service is interrupted for sufficient duration. Charter nevertheless claims that the legislature would have used the plural form, "subscribers," rather than the term "any subscriber," if it intended cable providers to give credits to all subscribers who lost service. Charter does not

-11-

cite any legal precedent, nor any grammatical rule, to support its argument, and we find it illogical: the statute's language plainly applies without limitation to all subscribers who lose service for twenty-four hours or more, just as a rule prohibiting "any person" less than thirty-five years old from becoming president applies to all such people despite its use of the singular word "person." See U.S. Const. art. II, § 1, cl. 4.  Similarly, we see no basis for Charter's claim that the legislature would have used the term "automatic" if it intended cable providers to grant refunds to all subscribers who lost service.  Although inclusion of that word in the statute would have provided belt-and-suspenders support for our conclusion, it does not follow that the word's absence leads us to disregard the clear meaning of the words the legislature actually used.

Even the implicit limitation made express in Charter's agreement -- that Charter knows or should have known of the interruption -- is not so limited as to apply only when Charter's knowledge arises from a consumer complaint or request.  If Charter knows, for example, that it is not transmitting to an entire area because one of its own facilities is not passing along a signal, we can conceive of no reason why the Massachusetts legislature would have intended -- but not written into the statute -- a requirement that subscribers in that area must communicate to Charter what it already knows or should know in order to receive a credit.

-12-

Of course we do not know -- or suggest -- that Charter failed to provide a credit or rebate to subscribers whom it knew (or should have known) suffered a service interruption for twenty-four or more hours. Also not raised by this appeal is when exactly service is "interrupted" under the statute.[5] On a review of dismissal of this complaint under Rule 12(b)(6), rather, we assume that plaintiffs suffered a covered service interruption, of which Charter was aware, simply because it is plausibly alleged.

We therefore assume that Charter has conducted itself and is currently asserting a right to continue conducting itself in a manner that we find to be violative of the licensing term that Massachusetts' legislature viewed as sufficiently important as to be a required term of all such licensing agreements. The question is whether plaintiffs can maintain a private cause of action as a result of this assumed breach. We now analyze that question, bearing in mind that the following discussion, to the extent it considers claims for damages, applies only to plaintiff Thompson.

## 1. Contract Claims

The plaintiffs contend that they can sue as third-party beneficiaries to enforce the licensing agreements incorporating the statutory mandate. Under Massachusetts law, to prevail on a third-

---

[5] Charter argues as a matter of fact that the plaintiffs' service interruption was outside its control, and as a matter of law that it was therefore not obligated to provide credits. As this appeal provides no occasion to find facts, we also express no view whatsoever on Charter's proffered reading of the law.

party beneficiary claim, a plaintiff must establish that the "language and circumstances of the contract show that the parties to the contract clearly and definitely intended the beneficiary to benefit from the promised performance." Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 466 (2009) (internal quotation marks, alterations omitted). Because government contracts by their very nature tend to benefit the public, Massachusetts courts apply a presumption against finding third-party liability in assessing those contracts, overcome only where the language and circumstances of the contract make it particularly clear that the parties intended members of the public to possess enforcement power. See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491 (1st Cir. 2013) (applying Massachusetts law). In assessing attempts by third parties to enforce government contracts, we pay special heed to "[t]he distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention," with only the latter supporting third-party enforcement. 9 J. Murray, Corbin on Contracts § 45.6, p. 92 (rev. ed. 2007) (quoted in Laguer v. OneWest Bank, FSB, 2013 WL 831055, at *11 (Mass. Super. Feb. 27, 2013)).

Here, the plaintiffs submitted with their complaint a copy of one licensing agreement between Charter and a Massachusetts municipality. We will assume for the purposes of this opinion that

the agreement is identical in all material respects to any other licensing agreement, with a different municipality, that might apply to the plaintiffs' claims. The contract requires Charter to "grant a pro rata credit or rebate to any Subscriber whose entire Cable Service is interrupted for twenty-four (24) or more consecutive hours, if the interruption was not caused by the Subscriber and the Licensee knew or should have known of the service interruption." The plaintiffs are correct that this provision seems intended to benefit cable customers such as themselves, and the contract requires Charter to make payment directly to those customers, lending support to their claim. See Pub. Serv. Co. of New Hampshire v. Hudson Light & Power Dep't, 938 F.2d 338, 342 (1st Cir. 1991). The contract provision thus resembles the illustration offered by the Second Restatement of Contracts of a government contract that does create enforceable rights in third parties: "A, a municipality, enters into a contract with B, by which B promises to build a subway and to pay damages directly to any person who may be injured by the work of construction." Restatement (Second) of Contracts § 313 illus. 3 (1981); see also MacKenzie, 738 F.3d at 491 (relying on this section of the restatement in applying Massachusetts law).

We are nevertheless persuaded by the language of the contract as a whole that the parties did not intend individuals to hold power to enforce it. The contract includes a separate section

-15-

that spells out in detail how the contract can be enforced. According to the contract, the municipality may seek specific performance, monetary damages, or revocation of the license. It must first notify Charter of an alleged breach, then wait thirty days for Charter to either cure the default or explain why it feels no cure is required. If the municipality is not satisfied, it must schedule a public hearing at which Charter may offer evidence. Only after those requirements have been fulfilled may the municipality pursue a remedy. Where the parties have provided such specific and elaborate procedures as prerequisites to enforcement, we cannot treat the plaintiffs' attempt to circumvent those procedures as consistent with the parties' intent.[6]

We note that the dismissal of the plaintiffs' third-party beneficiary claim does not deprive them of any opportunity for relief under the licensing agreement. Rather, in situations in which an elected local government holds enforcement power, citizens can seek recourse by acting through the political process to cause the municipality to seek a remedy in the form of credits for all affected consumers. But because the agreement here cannot

---

[6] Although neither party cites Astra USA, Inc. v. Santa Clara County, California, 131 S. Ct. 1342 (2011), it provides further support for our decision. See id. at 1347 (rejecting under federal common law an attempt by a third party to enforce a government contract where the contract incorporated statutory obligations, and suits by third parties "would undermine the [government's] efforts" to enforce the obligations "harmoniously and on a uniform . . . basis").

plausibly support a third-party beneficiary claim, the political process is the plaintiffs' only recourse to secure enforcement of the agreements qua agreements.

The plaintiffs' complaint also alleges breach of "contracts and/or implied contracts" between the individual plaintiffs and Charter. It appears that they refer here not to any express contract but instead to an implied contract that arose when they made advance payment for Charter's services. They have not made anything other than a perfunctory effort to defend such a claim on appeal, and so we affirm its dismissal. Finally, the plaintiffs' claim for breach of the duty of good faith and fair dealing fails because, for the reasons we have described above, the plaintiff's complaint does not establish any contractual relationship between them and Charter. See MacKenzie, 738 F.3d at 493.

**2. The Massachusetts Unfair and Deceptive Trade Practices Statute**

Although third-party beneficiary principles provide no basis on which the plaintiffs can sue Charter for breach of its promise to municipalities, Massachusetts' legislature has provided an alternative path to a similar destination, without requiring any inquiry into common law notions of intended beneficiaries. Specifically, Chapter 93A of the Massachusetts code authorizes consumers to sue for "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).

In considering whether a particular act or practice violates the unfairness prong of Chapter 93A, Massachusetts courts assess: "(1) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."  Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)) (internal alterations omitted). For the practice to fall within the penumbra of a statute's concept of unfairness, it need not actually violate the statute. Otherwise, there would have been no need for the Massachusetts Supreme Judicial Court to refer to penumbras.  Cf. Kattar v. Demoulas, 433 Mass. 1, 12-13 (2000) (holding that Chapter 93A "makes conduct unlawful which was not unlawful under the common law or any prior statute" (internal alteration omitted)).  Furthermore, because "there is no limit to human inventiveness in this field," Massachusetts courts evaluate unfair and deceptive trade practice claims based on the circumstances of each case.  Id. at 13 (internal quotation marks, alteration omitted).  In general, the evaluation of what constitutes an unfair trade practice is for the

finder of fact, subject to the court's performance of a legal gate-keeping function.  Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008).

A recent decision by the Massachusetts Supreme Judicial Court makes clear that a failure by Charter to pay a credit in accord with its statutorily-imposed contractual obligation would likely violate Chapter 93A.  See Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 504 (2011).  In Casavant, a state regulation required sellers of travel services to disclose refund policies to consumers.  Id.  The regulations further provided that, should a seller fail to disclose its refund policy to a customer who had purchased services, the customer could cancel his or her contract and receive a full refund.  Id.  Analyzing a cruise line's failure to provide a refund in accordance with these regulations, Massachusetts' highest court found such a clear violation of Chapter 93A that it reversed a contrary conclusion by the factfinder.  Id. at 504-05.

To be sure, this case differs from Casavant in that no regulation literally required that Charter provide credits to consumers.  Rather, a regulation required Charter to promise it would do so in specified circumstances.  But actually providing a credit is certainly within at least the penumbra of the statutory mandate that Charter promise to provide credits.  Why, after all, would the legislature have required Charter to promise to pay if it

-19-

did not intend for Charter to do so?  And if Charter breached such a promise, it caused precisely the injury to consumers that the legislature sought to avoid.  Whether such a breach violated 93A as a matter of law, as in <u>Casavant</u>, we need not decide at this stage. We need only decide whether the alleged conduct plausibly makes out a Chapter 93A claim.  It most certainly does.

We acknowledge that this conclusion seems at first blush at odds with our conclusion regarding the third party beneficiary claim.  Any such appearance is misleading.  To the extent a duty is merely created by contract, it makes sense that Massachusetts law would leave it to the contracting parties to decide who can enforce it.  To the extent that the duty also emanates from a legislative judgment that it reflects fair treatment of customers, however, the state legislature by enacting Chapter 93A has opted to let consumers seek relief in court.  In short, the Massachusetts legislature created two potential causes of action in the event of a breach by Charter:  an action for breach of contract, and an action under Chapter 93A, each subject to different procedures and remedies.  The fact that Massachusetts, like other states, allows the contracting parties to decide who can maintain an action for breach of the contract does not mean that Massachusetts has allowed the contracting parties to take away the consumers' rights under Chapter 93A.

### 3. Unjust Enrichment, Money Had and Received

Finally, the plaintiffs' complaint asserts claims for unjust enrichment and money had and received based on their own individual dealings with Charter.[7] Both claims rest on the notion that Charter unfairly benefited by collecting money from the plaintiffs for services not actually rendered.

Charter's only preserved argument against these claims is that "an express contract governs the relationship between the Plaintiffs and Charter," precluding any quasi-contract claim.[8] Charter is correct that damages for breach of contract and unjust enrichment are mutually exclusive. See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment."). Nevertheless, it is generally permissible to pursue alternative theories at the pleading stage. See Fed. R. Civ. P. 8(d). And, in any event, we cannot determine

---

[7] We have described these causes of action as "very close in character--one rooted in common law and the other equity jurisprudence." Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc., 470 F.3d 14, 21 (1st Cir. 2006). Their elements are as follows: "Money had and received is based on money, or its equivalent, which in equity and good conscience should be returned to the claimant and is often styled as money that should be returned where one is unjustly enriched at another's expense. Unjust enrichment is an equitable claim with the same elements save that it is not limited to enrichment by money, or its equivalent." Id. at 17 n.2 (internal citations and quotation marks omitted).

[8] Because it was not raised below, we will not consider Charter's alternative argument that the claims are "deficient for lack of sufficient pleading."

at this stage of the case whether Charter is correct that an express contract between the parties exists. In assessing a motion to dismiss, we focus narrowly on the plaintiffs' complaint along with any incorporated documents. The plaintiffs say that their complaint should not be interpreted as raising any claim based on a contract between them and Charter, and the complaint undisputedly did not incorporate any such contract, including the several formal contracts that Charter later submitted. Although we suspect that there is indeed an express contract between the parties that will, by its existence, foreclose a claim for unjust enrichment, we simply cannot say now that it is implausible to think otherwise.[9]

Consequently, we decline to find that the plaintiffs' complaint forecloses their quasi-contract claims.

## IV. Conclusion

For the reasons outlined above, we <u>affirm</u> the district court's exercise of jurisdiction under the Class Action Fairness Act but <u>vacate</u> the district court's grant of Charter's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Costs are taxed against the appellees.

<u>So ordered</u>.

---

[9] Rules 26(f)(3)(B) and 56 of the Federal Rules of Civil Procedure offer the district court plenty of discretion to have the parties fish or cut bait on this specific issue without any prolonged discovery, expense, or delay.