# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EMPLOYERS INSURANCE COMPANY OF WASAU; HELMSMAN MANAGEMENT SERVICES, LLC; LIBERTY INSURANCE CORPORATION; LIBERTY MUTUAL FIRE INSURANCE COMPANY; LM INSURANCE CORPORATION; THE FIRST LIBERTY INSURANCE CORPORATION; and WASAU UNDERWRITERS INSURANCE COMPANY, | § § § § § § § § § § § § § | No. 27, 2023D<br><br>Court Below: Superior Court of the State of Delaware<br><br>C.A. No. S19C-01-051 (S) |
| Defendants Below, Appellants/Cross-Appellees, | § § § | |
| v. | § § | |
| FIRST STATE ORTHOPAEDICS, P.A., on behalf of itself and all others similarly situated, | § § § § § § | |
| Plaintiff Below, Appellee/Cross-Appellant. | § § § | |

Submitted: October 18, 2023
Decided: January 8, 2024

Before **VALIHURA**, **TRAYNOR**, **LEGROW**, **GRIFFITHS**, Justices; and **DANBERG**, Chief Judge,[1] constituting the Court *en Banc*.

Upon appeal from the Superior Court of the State of Delaware. **REVERSED**.

---

[1] Chief Judge Danberg is sitting by designation under Del. Const. art. IV, § 12 and Supreme Court Rules 2(a) and 4(a), to complete the quorum.

Kevin J. Connors, Esquire, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, Wilmington, Delaware; Andrew Hatchett, Esquire (*argued*), Tiffany Powers, Esquire, ALSTON & BIRD LLP, Atlanta, Georgia, *for Defendants Below, Appellants/Cross-Appellees Employers Insurance Company of Wausau, et al*.

John S. Spadaro, Esquire (*argued*), JOHN SHEEHAN SPADARO, LLC, Wilmington, Delaware; Jonathan L. Parshall, Esquire, Lauren A. Cirrinicione, Esquire, MURPHY & LANDON, Wilmington, Delaware, *for Plaintiff Below, Appellee/Cross-Appellant First State Orthopaedics.*

**LEGROW**, Justice:

Each side in this declaratory judgment action appeals aspects of the Superior Court's decision awarding summary judgment to the appellee. Despite the numerous issues the parties raised, resolution of this appeal turns on the appellee's standing to file this action. The appellee's complaint sought a declaration that a billing code utilized by the appellant to deny insurance coverage to the appellee's patients violated Delaware's workers' compensation law. The appellant, however, implemented a new billing system six months before the appellee filed this action, and none of the codes that the appellant uses in its new system contains the challenged language in the old code.

The Superior Court held that the appellant's pre-suit voluntary discontinuation of the code did not divest the appellee of standing because (i) the appellant never conceded that the challenged code violated Delaware law, and the appellant therefore might resume using the code in the future; and (ii) the appellant had not "corrected" its response to 19 invoices for which it denied coverage using the challenged code.

We conclude that the appellee lacked standing to bring the case. In concluding otherwise, the Superior Court applied mootness principles. Although both doctrines assess a controversy's justiciability, mootness and standing involve distinct inquiries. Under the mootness doctrine, a party's voluntary cessation of challenged conduct *after* litigation commences ordinarily does not moot an otherwise live

controversy. But a defendant's voluntary cessation of conduct *before* litigation begins generally renders a controversy non-justiciable for lack of standing. In this case, the appellant stopped using the challenged code six months before the appellee filed its complaint. Accordingly, the appellee's request for a declaration regarding the code's compliance with Delaware's workers' compensation law did not seek to redress an actual or imminent injury. And the appellant's alleged failure to correct its responses to 19 invoices could not confer standing because the prospective relief that a declaratory judgment affords would not redress the injury caused by the statements already issued to the appellee's patients.

We therefore reverse the Superior Court's opinion granting summary judgment to the appellee.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual background relevant to this appeal is undisputed and relatively uncomplicated.

### A. Factual Background

Appellee, First State Orthopaedics, P.A. ("FSO"), is a Delaware orthopaedic practice.[2] Appellants Employers Insurance Company of Wausau Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, LM Insurance Corporation, The First Liberty Insurance Corporation, and Wausau Underwriters Insurance

---

[2] App. to Opening Br. at A366 (Amend. Compl.).

2

Company are insurance companies operating under the Liberty Mutual Group.[3] These insurers underwrite workers' compensation insurance in Delaware.[4] Appellant Helmsman Management Services, LLC ("Helmsman") is a wholly-owned subsidiary of Liberty Mutual Holding Company, Inc., providing third-party claims administration services to Liberty Mutual's Group members, including the other Appellants.[5] Collectively, Appellants are referred to as "Liberty."

In 2017 and 2018, Liberty routinely issued Explanation of Benefits forms to FSO using "Code x553." Those forms purported to deny coverage of workers' compensation bills for procedures that FSO performed.[6] The Explanation of Benefits generated by Code x553 stated:

> THIS SERVICE NOT AUTHORIZED BY CASE MANAGER. PLEASE CONTACT THE CASE MANAGER FOR FURTHER INFORMATION.[7]

FSO argues that this denial contravenes certain sections of the Delaware Workers' Compensation Code because the response fails to provide a meaningful explanation for the reason for the denial.[8] FSO relies on three sections of Title 19 to support its position. First, 19 *Del. C.* § 2362(b) mandates that

---

[3] *Id*. at A368.

[4] *Id.*

[5] *Id*. at A368–69.

[6] *Id*. at A370.

[7] *Id.*

[8] *Id*. at A369–70.

3

[a]ll medical expenses shall be paid within 30 days after bills and documentation for said expenses are received by the employer or its insurance carrier for payment, unless the carrier or self-insured employer notifies claimant or the claimant's attorney in writing that said expenses are contested or that further verification is required.[9]

And 19 *Del. C.* § 2322F(h) provides that "[a]n employer or insurance carrier shall be required to pay a health care invoice within 30 days of receipt of the invoice as long as the claim contains substantially all the required data elements necessary to adjudicate the invoice, unless the invoice is contested in good faith."[10] FSO argues that these two sections require an insurance carrier, or its third-party claims administration service, to promptly pay or contest claims.[11]

The centerpiece to FSO's claim in its Complaint is a third section of the workers' compensation statute: 19 *Del. C.* § 2322F(e).[12] Section 2322F(e) specifies that "[d]enial of payment for health care services provided pursuant to this chapter, whether in whole or in part, shall be accompanied with written explanation of reason for denial."[13] FSO contends that this section requires an insurer who denies coverage to set forth its reasons for doing so.[14]

---

[9] 19 *Del. C.* § 2362(b).

[10] 19 *Del. C.* § 2322F(h).

[11] App. to Opening Br. at A370 (Amend. Compl.).

[12] *Id.*

[13] 19 *Del. C.* § 2322F(e).

[14] App. to Opening Br. at A371 (Amend. Compl.).

4

According to FSO, although Code x553 purports to deny coverage because the "service [is] not authorized by the case manager," the explanation lacks any discernible meaning and prevents the claimant or provider—in this case FSO—from contesting the denial.[15] FSO's claim below turned on whether Section 2322F(e) requires an insurer to provide a "meaningful" explanation when it denies coverage and, in turn, whether Code x553 provides such an explanation.

## B.    Procedural Background

FSO filed its original complaint (the "Complaint") containing the above allegations on February 1, 2019.[16] Six months earlier, however, in August 2018, Liberty began using new bill review software for reasons unrelated to this litigation.[17] Unlike Liberty's previous software, the new software did not contain any coverage denials with the same language as Code x553.[18] After the software migration was completed in 2018, Liberty no longer issued coverage denials using the language in Code x553.[19]

In addition to setting forth the reasons why Code x553 allegedly violates the workers' compensation statute, the Complaint sought relief on behalf of FSO

---

[15] *Id.*

[16] *Id.* at A33 (Compl.); *id.* at A1–2 (Superior Court Docket).

[17] *Id.* at A765 (Third Affidavit of Jannie Miller); App. to Answering Br. at B46 (Miller Dep.).

[18] App. to Opening Br. at A765 (Third Affidavit of Jannie Miller); App. to Answering Br. at B46, B49 (Miller Dep.).

[19] App. to Opening Br. at A765 (Third Affidavit of Jannie Miller).

5

individually and as assignee of certain patients who had received coverage denials using Code x553 language.[20]  During the litigation, FSO identified 19 uncorrected responses to patient invoices for which it sought relief.[21]

FSO also sought class certification so that it could represent the interests of any Delaware patient or entity that received a coverage denial containing Code x553 language.[22]

The Complaint sought only one form of relief: a declaratory judgment.  Count I asked the Superior Court to enter a declaratory judgment as to "the parties' rights, duties, statutes or other legal relations,"[23] stating:

> 28. Contrary to the defendants' contentions, the [challenged Explanation of Benefits] do[es] meet the requirements of 19 *Del. C.* §§ 2362(b), 2322F(e), and 2322F(h). This is because, though the [challenged Explanation of Benefits] purport[s] on their face to deny coverage for the health care invoice(s) in question, they do not set forth any reason for the carrier or TPA's denial of coverage.

[20] *Id*. at A36 (Compl.).  As best we can discern from the record, there are 19 uncorrected patient invoices that FSO contends gave it standing to file the Complaint. *First State Orthopaedics, P.A. v. Emp.'s Ins. Co. of Wausau*, 2022 WL 18228287, at *4 (Del. Super. Dec. 29, 2022) ("Plaintiff responds that it is not only challenging the general language of Code x553 but also 19 discrete invoices sent within the three-year period before the complaint was filed.").  But FSO's attempt to include these invoices in the record is of limited value. Attached to its brief in opposition to Liberty's Motion for Summary Judgment are numerous invoices containing Code x553.  *See* App. to Opening Br. at A903–25, A937–40 (Exs. B, E & F to FSO's Brief in Opposition to Liberty's Motion for Summary Judgment).  These poorly scanned invoices barely are legible, and the Court hardly can decipher when Liberty issued the coverage denials or which Explanation of Benefits codes it used.

[21] *First State Orthopaedics, P.A.*, 2022 WL 18228287, at *6 ("Nor have Defendants provided me with the corrected explanations, or corrected the incorrect denials that it sent to patients over the years, including the 19 patients as to which Plaintiff claims to be an assignee.").

[22] App. to Opening Br. at A41–42 (Compl).

[23] *Id*. at A47.  FSO also sought attorneys' fees and costs.

6

29. The defendants' use of the [challenged Explanation of Benefits] is in violation of 19 *Del. C.* §§ 2362(b), 2322F(e), and 2322F(h), and therefore contrary to law.[24]

Liberty moved to dismiss FSO's Complaint in September 2019[25] but did not initially challenge FSO's standing.[26] Liberty first raised standing in a letter to the court filed after briefing on its motion was complete.[27] In its letter, Liberty argued that FSO lacked standing because Liberty "voluntarily terminated the allegedly deficient explanation *before* FSO filed its Complaint and for reasons independent of this litigation."[28]

On May 12, 2020, the Superior Court denied Liberty's motion to dismiss. Although Liberty raised its standing argument belatedly, the court nevertheless addressed the issue.[29] The court held that FSO had standing despite Liberty having abandoned Code x553 during the software migration because Liberty's defense of the code during the litigation left "the specter of its use in the future."[30] As to the

---

[24] *Id*. at A46.

[25] *Id*. at A61–66 (Liberty's Motion to Dismiss).

[26] *Id*. at A191–93 (Liberty's Reply Brief in Support of Motion to Dismiss).

[27] *Id*. at A248 (Liberty's Post-Hearing Letter).

[28] *Id*.

[29] *First State Orthopaedics, P.A. v. Emp.'s Ins. Co. of Wausau*, 2020 WL 2458255, at \*3 (Del. Super. May 12, 2020).

[30] *First State Orthopaedics, P.A.*, 2020 WL 2458255, at \*3. The court also indicated that, "[i]f the defendants were serious about ending the practice, they could reach an agreement with [FSO] to do so. They have not and as a result I believe there remains a controversy to be litigated." During the proceedings however, Liberty offered on several occasions to enter into a stipulation

merits of FSO's claim, the court held that under Section 2322F(e), a coverage denial must be meaningful and that, at that stage in the litigation, the court could not conclude that Code x553 met that requirement.[31]

On November 6, 2020, FSO filed its Amended Complaint, adding a new subclass for class certification, expanding the declaratory relief sought, and adding a new purported injury:

> 28. Contrary to the defendants' contentions, the [challenged Explanation of Benefits] do not meet the requirements of 19 *Del. C.* §§ 2362(b), 2322F(e), and 2322F(h). This is because, though the [challenged Explanation of Benefits] purport on their face to deny coverage for the health care invoice(s) in question, they do not set forth any reason for the carrier or TPA's denial of coverage.

---

preventing it from ever using again Code x553 or the language contained therein. *Id.*; *see* App. to Opening Br. at A352 (Hearing on Motion for Reargument) (The Court: "I will turn to the defense. Is there any hope to have the two parties or the two lawyers -- the two groups of lawyers in this case put their heads together to reach some sort of stipulated resolution?" Liberty's Counsel: "Certainly. I think we would agree that we -- we weren't using the code when we started, that we would never use the code again in the future. If the Court enters an order that we are not allowed to use this code in the future, I don't know why that applies to us as a company, a group of defendants."); *id*. at A996 (Liberty's Opposition to FSO's Motion for Class Certification) ("Moreover, Defendants have offered to stipulate to a consent judgment with FSO that precludes Defendants from ever using the challenged denial code again in the future, and FSO's corporate designee testified that the proposed consent judgment would provide all the relief that FSO seeks in this litigation"); *id*. at A1183 (Hearing on Summary Judgment) (Liberty's Counsel: "So then the other thing is, well, what about going forward? And again, because of the discontinued pre-suit, we don't think you need a consent judgment, we don't think there was standing to begin with. It was discontinued pre-suit. But we are willing to, because we have no interest in using this code again; we are willing to stipulate that we have discontinued the code and that we are no longer interested in using it again in the future." The Court: "Well, when you say no longer interested, you would no longer use it in the future?" Counsel: "Yes. Which means stipulate to a binding judgment from the Court saying you are not allowed to use it. And we, of course, would be legally required to follow Your Honor's order.").

[31] *First State Orthopaedics, P.A*, 2020 WL 2458255, at *3.

8

29. The defendants' use of the [challenged Explanation of Benefits] is in violation of 19 *Del. C.* §§ 2362(b), 2322F(e), and 2322F(h), and therefore contrary to law. *In addition, the defendants have not undertaken to provide class members with a revised or corrected explanation in place of, in substitution of, or in supplement to, the offending "non-explanation"; and this, too, is contrary to law.*[32]

In April 2021, FSO filed its Motion for Class Certification under Rule 23(b)(2).[33] FSO sought to represent the following classes:

**Class A**

All persons or entities who, at any time since January 31, 2016, submitted to one or more of the defendants a health care invoice with respect to care provided to a Delaware workers' compensation claimant where —

(i)     the defendant responded to the submission by stating that

THIS SERVICE [IS] NOT AUTHORIZED BY CASE MANAGER. PLEASE CONTACT THE CASE MANAGER FOR FURTHER INFORMATION, and

(ii) the defendant neither paid all or any part of the invoice within 30 days of receipt, nor communicated in writing, within 30 days of receipt, any other basis for withholding payment for the invoice.

**Class B**

All members of Class A who have not received from any defendant a revised or corrected explanation in place of, in substitution of, or in supplement to, the putative explanation set forth above.[34]

---

[32] App. to Opening Br. at A377 (Amend. Compl.) (emphasis added).

[33] Super. Ct. Civ. R. 23(b)(2) ("The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.").

[34] App. to Opening Br. at A416 (FSO's Motion for Class Certification).

In March 2022, Liberty filed its Motion for Summary Judgment, arguing that it was entitled to judgment because: (1) FSO lacked standing; (2) the dispute was moot because Liberty was willing to enter into a consent judgment and reissue the uncorrected invoices; (3) FSO's claim was barred by the relevant statute of limitations; and (4) Code x553 did not violate Section 2322F(e).[35] Relevant to this appeal, Liberty explained that its current bill review software did not contain Code x553 or any other explanation-of-benefits code with similar language.[36] Liberty argued that its defense of the discontinued code was not relevant because the plaintiff bears the burden of proving standing, including that the injury *likely* will recur, not that it is merely possible.[37]

In its opposition to Liberty's motion, FSO argued that it had standing despite Liberty's pre-Complaint elimination of Code x553 because Liberty had not corrected some of its coverage denials that contained Code x553 and continued to defend its use of the code.[38] This, FSO argued, would be remedied by relief in the form of a declaratory judgment "confirming that claim denials under Section 2322F(e) must set forth ***meaningful*** explanations."[39]

---

[35] *Id*. at A534–38 (Liberty's Motion for Summary Judgment).

[36] *Id*. at A539.

[37] *Id*. at A548.

[38] *Id*. at A884 (FSO's Opposition to Motion for Summary Judgment).

[39] *Id*. at A885–86.

On December 29, 2022, the Superior Court issued its opinion resolving both motions.[40] The court first denied FSO's Motion for Class Certification on the basis that FSO had failed to prove that class certification was appropriate in this context, given that Liberty already had ceased using Code x553 and a declaratory judgment stating that Code x553 violated Section 2322F(e) would bind Liberty regardless of whether it expressly applied to FSO or the entire proposed class.[41]

The court then considered each of Liberty's summary judgment arguments. The court rejected Liberty's argument that FSO's Complaint was untimely under the three-year statute of limitations. The court reasoned that although Liberty began using Code x553 more than three years before FSO filed suit, FSO filed the Complaint in its capacity as its patients' assignee, and Liberty had denied coverage for certain invoices issued to those patients within the three-year limitations period.[42]

The court next addressed Liberty's argument that Code x553 met Section 2322F(e)'s requirements.[43] The court reiterated its previous holding that Section 2322F(e) required an insurer to provide a "*meaningful* explanation for a denial" that could "be readily understood."[44] The court then held that FSO had raised a material

---

[40] *First State Orthopaedics, P.A*, 2022 WL 18228287.

[41] *Id.* at *3–4.

[42] *Id.*

[43] *Id.* at *8.

[44] *Id.*

11

factual dispute as to whether it understood the meaning of Code x553 such that it

could "make an informed decision whether or not to challenge particular denials."[45]

As to Liberty's standing argument, the Superior Court concluded that FSO

had standing because: (1) the 19 uncorrected claim denials presented an ongoing

injury; and (2) Liberty's unwillingness to "admit that [it] violated 19 *Del. C.* §

2322F(e)" created an actual and imminent injury to FSO that could be redressed by

a declaratory judgment stating that claim denials must be meaningful.[46]

> The court reasoned that:
>
> The challenged conduct and the dispute over it are ongoing.
> Defendants have not proffered a global effort to withdraw their
> explanation, or to correct them with new explanations. Even if
> Defendants have corrected the explanation for Plaintiff's patients, the
> challenged claim denials remain the operative explanation for other
> numerous patient claims in Delaware. Defendants' designee would not
> concede that the claim denials must communicate an actual basis in fact
> or law for insurer's position. Thus, there remains an ongoing dispute
> between the parties. I find that [FSO] has standing.[47]

The court also held that Liberty failed to carry its burden on the mootness

defense because it could resume using Code x553 in the future, it had not corrected

---

[45] *Id.* at *10.

[46] *Id.* at *5–7.

[47] *Id.* at *7. The court's reliance on uncorrected denials issued to other unidentified patients in Delaware to establish standing seems to contravene the court's simultaneous decision denying FSO's Motion for Class Certification. *See id.* at *3.

all of the explanations containing Code x553, and FSO's requested relief would have a "practical effect" on the existing dispute.[48]

The court then entered summary judgment *sua sponte* for FSO. The court reasoned that Code x553 did not, as a matter of law, provide a meaningful explanation.[49] The court entered the following declaratory judgment, "I declare that the response to request to pay medical bills pursuant to Delaware's Workers' Compensation Law requires a meaningful response from an insurance carrier denying the request. The response at issue here, Code x553, does not comply with the Delaware Workers' Compensation Law."[50]

## C. Contentions on Appeal

Liberty appealed the Superior Court's opinion, arguing that the court erred when it denied Liberty's Motion for Summary Judgment as to standing, the statute of limitations, and Code x553's compliance with Section 2322F(e).[51] FSO cross-appealed, arguing that the court erred when it denied the Motion for Class Certification because FSO met all of Rule 23(b)(2)'s elements and the court therefore lacked discretion to deny certification.[52]

---

[48] *Id.* at \*7.

[49] *Id.* at \*8.

[50] *Id.* at \*10.

[51] Opening Br. at 4–7.

[52] Answering Br. at 32–34.

## II.    STANDARD OF REVIEW

This Court reviews the Superior Court's grant of summary judgment *de novo*.[53] We also review questions of justiciability, including standing, *de novo*.[54]

## III.    ANALYSIS

Although both parties raise issues for our consideration, we need only address Liberty's standing argument to resolve this appeal. Because we conclude that FSO did not have standing when it filed its Complaint, we do not reach the parties' other arguments.

In order to adjudicate a matter, a court must have a justiciable controversy before it.[55] Justiciability describes "whether a case is properly suited for resolution by" a court.[56] The four aspects of justiciability include standing, mootness, ripeness, and political question.[57] Although Liberty only raised standing in this appeal, the

---

[53] *State Farm Mut. Auto. Ins. Co. v. Davis*, 80 A.3d 628, 632 (Del. 2013).

[54] *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1262 (Del. 2021).

[55] *Crescent/Mach 1 Partners, L.P. v. Dr. Pepper Bottling Co. of Texas*, 962 A.2d 205, 208 (Del. 2008) (quoting *Warren v. Moore*, 1994 WL 374333, at *2 (Del. Ch. July 6, 1994)).

[56] *Rucho v. Common Cause*, 588 U.S. —, —, 139 S.Ct. 2484, 2491 (2019).

[57] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does."). *See Bankruptcy Litigation* § 1:2 ("Issues of justiciability can arise, for example, in instances where a matter is not ripe, where an advisory opinion is sought, where a matter is moot, where a party lacks standing, and where the parties in the dispute do not hold adverse interests."); 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.12 (3d ed.) ("Although discrete names have been given to the several nominate categories of justiciability, they are tied closely together. Standing generates the most excitement, because it focuses directly on the question whether a particular interest or injury is adequate to invoke the protection of judicial decision. Ripeness and mootness easily could be seen as the time dimensions of standing. Each assumes that an asserted injury would be adequate; ripeness then

14

parties' arguments and the Superior Court's decision require us to discuss the distinction between mootness and standing. FSO's arguments frequently conflate the two doctrines, but they are not the same, and the standards should not be muddled.[58]

The United States Supreme Court has recognized that the interrelatedness between standing and mootness can prove troublesome for courts to disentangle.[59] To oversimplify the distinction between the two, "standing generally assesses whether [the plaintiff's personal] interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings."[60] Moreover, the "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the [] courts are devoted to those disputes in which the parties have a concrete stake."[61] By contrast, when "mootness is an issue, the case has been

---

asks whether an injury that has not yet happened is sufficiently likely to happen, and mootness asks whether an injury that has happened is too far beyond a useful remedy. Political-question analysis also is affected by the extent of individual injury.").

[58] *West Virginia v. Env't Prot. Agency*, 587 U.S. —, —, 142 S. Ct. 2587, 2594 (2022) ("The distinction between mootness and standing matters.").

[59] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[T]he Court of Appeals confused mootness with standing. The confusion is understandable, given this Court's repeated statements that the doctrine of mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997))).

[60] *Uzuegbunam v. Preczewski*, 592 U.S. —, —, 141 S. Ct. 792, 796 (2021).

[61] *Friends of the Earth, Inc.*, 528 U.S. at 191.

brought and litigated, often [] for years[,] [and] [t]o abandon the case at an advanced stage may prove more wasteful than frugal."[62]

Under Article III of the United States Constitution, a plaintiff bears the burden of proving standing, which includes three prongs.[63]  First, the plaintiff must allege an injury in fact, which is both concrete and actual or imminent.[64]  An actual or imminent injury is one that is neither hypothetical nor conjectural.[65]  Second,  the plaintiff must show that the injury is caused by the defendant's actions.[66]  A plaintiff can meet this prong by demonstrating that the injury is "fairly traceable" to the defendant's "complained-of conduct."[67]  And third, the plaintiff must show that their requested relief is likely to redress the injury.[68]  We generally follow Article III's standing requirements.[69]

---

[62] *Id.* at 191–92.

[63] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) ("The 'irreducible constitutional minimum of standing' contains three requirements . . . this triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.").

[64] *Steel Co.*, 523 U.S. at 103.

[65] *Id.*

[66] *Id.*

[67] *Id.* (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

[68] *Steel Co.*, 523 U.S. at 103 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231(1990)).

[69] *Dover Hist. Soc'y v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (following Article III standing, "(1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and

In contrast, a party seeking to employ the mootness doctrine, typically the defendant, bears the burden of establishing that the controversy has become moot.[70] The mootness doctrine addresses cases where a controversy existed at the time the plaintiff commenced litigation but the controversy later dissolves.[71] Where a defendant voluntarily discontinues their conduct in response to a complaint being filed, we apply the mootness doctrine.[72] In those cases, voluntary cessation does not automatically deprive the court of jurisdiction to hear the case.[73] Under the mootness standard, the *defendant* bears the "heavy" burden of proving the controversy has become moot.[74]

---

[70] (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (quoting *Soc'y Hill Towers Owners' Ass'n v. Rendall*, 210 F.3d 168, 175–76 (3d Cir. 2000))). *See also Albence v. Higgin*, 295 A.3d 1065, 1086 (Del. 2022) ("Delaware's standards for determining standing are generally the same as the requirements for establishing Article III standing in federal court. Unlike the federal courts, however, where standing may be subject to stated constitutional limits, we apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are mere intermeddlers." (internal quotations and citations omitted)).

[70] *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993) ("While the initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once that burden has been met courts are entitled to presume, absent further information, that jurisdiction continues. If a party to an appeal suggests that the controversy has, since the rendering of judgment below, become moot, that party bears the burden of coming forward with the subsequent events that have produced that alleged result.").

[71] *State Farm Mut. Auto. Ins. Co.*, 80 A.3d at 632.

[72] *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979).

[73] *Id.*

[74] *United States v. W.T. Grant Co.*, 354 U.S. 629, 633 (1953); *see also Already, LLC v. Nike, Inc*, 568 U.S. 85, 96 (2013) ("[T]he voluntary cessation standard requires the defendant to show that the challenged behavior cannot reasonably be expected to recur . . . .").

17

When, however, a defendant ceases engaging in the challenged conduct before a lawsuit is filed, the correct doctrine to be applied is standing, not mootness.[75] For the reasons that follow, FSO did not prove standing to bring its declaratory judgment claim because it could not satisfy the first or third prongs of the standing analysis.[76] The Superior Court therefore should have dismissed FSO's claims.

### A. FSO cannot demonstrate injury in fact.

The Superior Court held that FSO demonstrated injury in fact, notwithstanding Liberty's pre-suit abandonment of Code x553, because (1) Liberty had not corrected the 19 claim denials, and (2) Liberty continued to defend Code x553 on its merits, thereby suggesting it could resume using the code in the future.[77] As to the uncorrected claim denials, past harm does not automatically establish an imminent injury,[78] and, as explained in Section III(B) of this Opinion, a declaratory

---

[75] *Renne v. Geary*, 501 US 312, 320 (1991) ("[T]hat [mootness] doctrine will not revive a dispute which became moot before the action commenced. 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))).

[76] The parties do not dispute that FSO meets the second prong of the standing analysis.

[77] *First State Orthopaedics, P.A*, 2022 WL 18228287, at *7.

[78] *Adarand Constructors, Inc.,* 515 U.S. at 210–11 ("[T]he fact of past injury, 'while presumably affording [the plaintiff] standing to claim damages . . . , does nothing to establish a real and immediate threat that he would again suffer similar injury in the future' with respect to conferring standing." (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983))). FSO's designee conceded in deposition that Liberty's offer to agree never to use Code x553 would provide the *same* relief that FSO sought via summary judgment. Accordingly, FSO failed to show that FSO faced imminent harm. App. to Opening Br. at A719–20 (Hutchinson Dep.).

18

judgment does not provide retrospective relief and therefore would not redress a purported injury.[79]

The Superior Court erred in concluding that Liberty's defense of Code x553 on its merits established an injury in fact. That defense had no bearing on FSO's standing under the circumstances of this case. First, the record amply demonstrated that there was no real or immediate risk that Liberty would continue to use Code x553. Although Liberty argued the code was consistent with Delaware law, Liberty declared that it would not use Code x553 again;[80] consistently offered to enter into a stipulation or consent order not to use the code;[81] confirmed that its new billing system did not include Code x553 language;[82] and adopted the new billing system independently of and before the litigation began.[83]

---

[79] *Los Angeles*, 461 U.S. at 129 (Marshall, J., dissenting) ("[M]onetary relief would plainly provide redress for his past injury, and prospective relief would reduce the likelihood of any future injury.").

[80] Video of Oral Argument, at 26:30–25:40 (Oct. 18, 2023) [hereinafter Oral Argument].

[81] App. to Opening Br. at A551–52 (Liberty's Motion for Summary Judgment) ("Defendants are willing to enter a consent judgment that would prevent them from ever using Code x553—or any other code that refers to prior authorization—in response to a Delaware workers' compensation claim."); *id*. at A766 (Liberty's Motion for Summary Judgment); *id*. at A344–45 (Hearing on Motion for Reargument) ("[W]e would volunteer to a consent order and judgment to the effect that we will never use this code again in the future."); *id*. at A353 ("[W]e are willing to agree to a consent order. We are willing to -- we would enter into an agreement with the plaintiff that we will not use this specific code in the future and would like to be able to resolve it on that basis.").

[82] *Id*. at A355 (Hearing on Motion for Reargument) ("The code is gone. We've moved to a new platform and a new system. The codes that were provided in that new system by a third-party provider doesn't use this language anymore.").

[83] *Id*. at A765 (Third Affidavit of Jannie Miller) ("The decision to switch bill-review platforms did not have anything to do with pending or threatened litigation."). Liberty *consistently* made that representation throughout the trial court proceedings and FSO does not argue anything to the

In addition, although we sympathize with the lower court's frustration with Liberty's at-times-confusing position—consistently defending Code x553 while representing that its use had been permanently discontinued[84]—the court's analysis regarding Liberty's theoretical future use of the billing code conflated mootness with standing.[85] The cases on which the court and FSO relied involved a party's cessation

contrary. *Id.* at A476, A486 (Liberty's Response to Interrogatories); *id.* at A539 (Employer's Motion for Summary Judgment); *id.* at A999 (Liberty's Opposition to FSO's Motion for Class certification); *id.* at A1178 (Hearing on Summary Judgment).

[84] *Id.* at A1144 (The Court: "Given the argument that you've made here today, and we can limit it if you want to non-certified, do you believe that the explanation given under Code x553 would be appropriate under Delaware law?" Liberty's Counsel: "I do."); *id.* at A1183 (Liberty's Counsel: "So then the other thing is, well, what about going forward? And again, because of the discontinued pre-suit, we don't think you need a consent judgment, we don't think there was standing to begin with. It was discontinued pre-suit. But we are willing to, because we have no interest in using this code again; we are willing to stipulate that we have discontinued the code and that we are no longer interested in using it again in the future." The Court: "Well, when you say no longer interested, you would no longer use it in the future?" Liberty's Counsel: "Yes. Which means stipulate to a binding judgment from the Court saying you are not allowed to use it. And we, of course, would be legally required to follow Your Honor's order."); *id.* at A1186 (Liberty's Counsel: "Now, they actually don't ask in the briefs that that consent judgment make us say that it was an unlawful practice. And so one of the things that you hear on the mootness argument is that, are you continuing to defend the code. And Your Honor raised that, of course, at the motion to dismiss stage, that we will continue to defend the code. I believe the record in this case is justified in that defense, because, again -- not defending that we used it correctly. We have never said that. But the question is whether it was a written explanation of reason for denial, and we believe that the evidence has suggested that. If it can resolve the case for us to say, hey, it was not a picture of clarity, we might talk about that. But the question is, what does that mean implication-wise for an attorney who has a serial litigant, a serial plaintiff, and who was apparently seeking attorneys' fees that we think are disallowed. And so for us to admit a legal violation that we don't think we committed, and the plaintiff is going to somehow try to use that as some type of ammunition and armor to inappropriately then litigate a question of attorneys' fees -- and at this point, we've actually spent a lot on the case because we had to take discovery to show that they did, in fact, understand the code.").

[85] *Friends of the Earth, Inc.*, 528 U.S. at 190 ("[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990))); *Renne*, 501 U.S. at 320 ("[T]hat [mootness] doctrine will not revive a dispute which became moot

of conduct after litigation was filed. But concerns that a defendant will resume challenged conduct once litigation is dismissed relate to the "capable of repetition yet evading review" exception to the mootness doctrine. No such exception applies to standing.[86]

The Superior Court centered its standing analysis on *Sanborn v. Geico General Insurance Co.*, a case involving a defendant's voluntary cessation of conduct *after* the plaintiff filed its complaint.[87] In *Sanborn*, the plaintiff filed a complaint seeking a declaration that her insurance company's policy of refusing to pursue deductible recovery violated Title 21 of the Delaware Code.[88] After the plaintiff filed her complaint, the insurance company—GEICO—implemented a new claims-handling policy that conformed to the plaintiff's requested relief.[89] After changing its policy, GEICO moved for summary judgment, arguing that the plaintiff lacked standing because she failed to show that she had suffered an injury in fact and

---

before the action commenced. 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting *O'Shea*, 414 U.S. at 495–96)).

[86] *Friends of the Earth, Inc.*, 528 U.S. at 191 ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum.").

[87] *First State Orthopaedics, P.A*, 2022 WL 18228287, at *5–6 (quoting *Sanborn v. Geico Gen. Ins. Co.*, 2016 WL 520010, at *7–8 (Del. Super. Feb. 1, 2016)).

[88] *Sanborn*, 2016 WL 520010, at *1.

[89] *Id*. at *2. Its efforts to change the policy started before the plaintiff filed the complaint.

21

failed to show that a declaratory judgment would redress her injury.[90] The Superior

Court in *Sanborn* held that the plaintiff had demonstrated standing because:

> *[a]t the time* Ms. Sanborn filed this action, GEICO's then-current policy did not routinely seek recovery of the deductibles of its insured until the applicable deductible was exhausted. *Shortly after* Ms. Sanborn filed her lawsuit, GEICO's new claims-handling policy was implemented. The new policy provides that GEICO will assert its subrogation rights and protect its insureds' interests, regardless of whether the applicable deductible has been exhausted. Although GEICO's new policy adheres to 21 *Del. C.* § 2118(a)(2)(f), GEICO has made it clear, in this litigation and as recently as at oral arguments on October 26, 2015, that GEICO still disagrees with the Court's decision in *Stratton* and does not believe its former policy violated 21 *Del. C.* § 2118(a)(2)(f). Accordingly, and despite the new claims-handling policy, GEICO still maintains the position that the insurer is not required to pursue recovery of an insured's deductible until the deductible is exhausted.[91]

Although the *Sanborn* parties and the court framed the issue as one concerning

the plaintiff's standing, settled law establishes that the justiciability question before

the *Sanborn* court actually was mootness. Again, because standing is assessed *at

the time* a complaint is filed, GEICO's policy change *after* the plaintiff filed her

complaint would not prevent her from establishing standing.[92]

The decision in *Sanborn* underscores the importance of distinguishing

standing from mootness when justiciability questions arise. For instance, while

---

[90] *Id.* at *7.

[91] *Id.* (emphasis added).

[92] *Uzuegbunam*, 592 U.S. at —, 141 S. Ct. at 796; *Sanborn*, 2016 WL 520010, at *7.

purportedly addressing the plaintiff's standing, the court considered GEICO's refusal to concede that its old policy violated the Delaware statute despite having implemented a new, conforming policy and stated, "[t]he discrepancy between GEICO's policy and its interpretation of the statute render the injury suffered by Ms. Sanborn one that is capable of evading review. Therefore, the Court determines that Ms. Sanborn has plead[ed] the existence of an injury sufficient to establish standing."[93] But the "evading review" exception does not apply to the standing doctrine.[94] *Sanborn* therefore is best understood as a mootness case, and the Superior Court's reliance on *Sanborn* and on concerns that Liberty would re-deploy Code x553 was mistaken for purposes of resolving FSO's standing. [95]

FSO's reliance on *Knox v. Service Employees International Union, Local 1000*[96] and *Cooper v. Charter Communications Entertainments I, LLC*[97] is similarly misplaced.[98] In *Knox*, the Supreme Court held that a union's consistent defense of its challenged practices preserved the controversy between the parties even though

---

[93] *Sanborn*, 2016 WL 520010, at *8.

[94] *Burroughs v. State*, — A.3d —, —, 2023 WL 5603971, at *5 (Del. Aug. 30, 2023) ("There are two generally recognized exceptions to the mootness doctrine: 'situations that are capable of repetition but evade review or matters of public importance.'" (quoting *Gen. Motors Corp. v. New Castle Cnty.*, 701 A.2d 819, 823 n.5 (Del. 1997))).

[95] *Friends of the Earth, Inc.*, 528 U.S. at 189.

[96] 567 U.S. 298 (2012).

[97] 760 F.3d 103 (1st Cir. 2014).

[98] Answering Br. at 50.

the union ceased the practice and offered the plaintiffs relief while the appeal was pending.[99] *Knox* does not, as FSO contends, support the proposition that a defendant's consistent defense of the merits of their conduct creates the injury in fact required to establish standing.[100] Instead, *Knox* addresses a scenario in which a defendant's voluntary cessation of conduct during litigation will fail to moot a controversy.[101] For the same reasons, *Cooper* does not do the legwork that FSO believes it does because, again, the defendant there ceased the disputed conduct *after* the complaint was filed, and for those reasons, the First Circuit held that the claims were not moot.[102]

Finally, FSO argues that because Liberty did not raise its mootness argument on appeal, it implicitly waived its standing argument.[103] FSO posits that Liberty has conceded the existence of a live controversy by failing to renew its mootness argument.[104] This argument falters for two reasons. *First*, as discussed above at length, standing and mootness are distinct doctrines, and Liberty is free to argue that FSO lacks standing without also arguing that the controversy is moot. In fact, it

---

[99] *Knox*, 567 U.S. at 307.

[100] Answering Br. at 51.

[101] *Knox*, 567 U.S. at 307.

[102] *Cooper*, 760 F.3d at 106–07.

[103] Answering Br. at 51.

[104] *Id*. at 51–52.

would be inconsistent for Liberty to argue that the same action—cessation of challenged conduct—both divested FSO of standing and mooted the action. When a litigant argues that a controversy has become moot, inherent in that argument is the assumption that, at one point, the plaintiff had standing.[105] *Second*, and more importantly, even if Liberty's shifted position could be viewed as a concession as to standing, litigants cannot waive standing requirements, and courts retain their ability to consider justiciability at any time.[106]

## B.     FSO cannot demonstrate redressability.

The Superior Court also erred in concluding that FSO's injury could be redressed in this action. Under the standing doctrine's redressability prong, the relief sought must be capable of redressing the plaintiff's injury or grievance.[107] "To

---

[105] *See Friends of the Earth, Inc.*, 528 U.S. at 189.

[106] *FW/PBS, Inc*, 493 U.S. at 230–31 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)) ("Although neither side raises the issue here, we are required to address the issue even if the courts below have not passed on it . . . and even if the parties fail to raise the issue before us. The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'); *In re Pressman-Gutman Co., Inc.,* 459 F.3d 383, 402 n.20 (3d Cir. 2006) ("Article III standing, which, of course, is not subject to waiver."). Because we previously adopted Article III's standing requirements, this Court also must independently consider whether a plaintiff has standing. *See Dover Hist. Soc'y*, 838 A.2d at 1110 (following Article III standing, "(1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (quoting *Soc'y Hill Towers Owners' Ass'n*, 210 F.3d at 175–76)).

[107] *Albence*, 295 A.3d at 1085.

25

determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered."[108]  Additionally, the plaintiff must show that it is likely, not just speculative, that the requested relief will redress the injury.[109]  Here, FSO sought solely declaratory relief, which affords only prospective, *i.e.*, forward-looking, relief.[110]  Where a plaintiff seeks a declaratory judgment, it must show that, absent a favorable outcome in litigation, the defendant's wrongful conduct will go unchecked.[111]  This principle precludes an action for declaratory judgment where the defendant ceased engaging in the contested conduct before the complaint was filed unless the plaintiff can prove a real and immediate risk of future injury.[112]  FSO has not carried that burden here.

---

[108] *California v. Texas*, 593 U.S. —, —, 141 S. Ct. 2104, 2115 (2021).

[109] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 904 (Del. 1994).

[110] *Hampson v. State ex rel. Buckson*, 233 A.2d 155, 156 (Del. 1967) ("The principal purpose of the [declaratory judgment] statute is to provide preventive justice."); *Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("If in a proper case the association seeks a *declaration, injunction, or some other form of prospective relief*, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." (emphasis added)).

[111] *Friends of the Earth, Inc.*, 528 U.S. at 190 ("[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" (quoting *Whitmore*, 495 U.S. at 158)); *O'Shea*, 414 U.S. at 495–96  ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

[112] *Adarand Constructors, Inc.*, 515 U.S. at 211 ("[T]o maintain its claim for forward-looking relief, our cases require [the plaintiff] to allege that the use of [the contested clauses] in the future constitutes 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" (quoting *Lujan*, 504 U.S. at 560)); *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would

FSO sued Liberty on behalf of patients whose bills were rejected with Code x553 on the Explanation of Benefits. Given Liberty's discontinuation of Code x553 before FSO filed suit, the only injury that FSO arguably pleaded relates to the existing, uncorrected claim denials.[113] Because a declaratory judgment stating that Code x553 violates the statute would not redress the injury that *those* patients have suffered, the claim denials do not confer standing to FSO.[114]

The declaratory judgment that the Superior Court entered confirms this conclusion. The court declared that "the response to request to pay medical bills

---

be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment"); *cf. Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) ("At the core of the standing doctrine is the requirement that a plaintiff 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief' . . . Plaintiffs alleged in their complaint that they were suffering a direct and current injury as a result of this detention, and would continue to suffer that injury until they received the probable cause determination to which they were entitled. Plainly, plaintiffs' injury was at that moment capable of being redressed through injunctive relief.").

[113] FSO argues that it has standing because Liberty never corrected its response to these invoices. Answering Br. at 46–49. ("Though the defendants hammer away at their supposed pre-suit abandonment of Code x553, they do not dispute that 'discontinuing' the code does nothing to 'discontinue' its effect. This means that, once a provider is saddled with the code's tautological explanation, that provider remains without an explanation for as long as the denial remains uncorrected.'); *id*. at 46. But for the same reasons discussed above, relief in the form of FSO's requested declaratory judgment would do nothing to "discontinue" the effect of any uncorrected denials.

[114] *Steel Co.*, 523 U.S. at 109–110 ("Because respondent alleges only past infractions of EPCRA, and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury. . . . Having found that none of the relief sought by respondent would likely remedy its alleged injury in fact, we must conclude that respondent lacks standing to maintain this suit, and that we and the lower courts lack jurisdiction to entertain it.").

27

pursuant to Delaware's Workers' Compensation Law requires a meaningful response from an insurance carrier denying the request. *The response at issue here, Code x553, does not comply with the Delaware Workers' Compensation Law*."[115] Nothing in that declaration required Liberty to reissue the claim denials with new codes. The court simply declared that using Code x553 violates Section 2322F(e). And FSO correctly did not seek that relief because the Superior Court could not have awarded what would essentially have amounted to an injunction.[116]

In fact, during our Court's oral argument, FSO conceded that the court would have had to provide "corresponding declaratory relief" to redress the injury caused by the uncorrected claim denials.[117] FSO then acknowledged that it would have to seek an injunction to correct previous claim denials and that the relief the Superior Court granted was "entirely about future conduct."[118] When pressed for an answer as to how relief that only concerns future conduct could redress past conduct, FSO ultimately conceded that only an injunction would require Liberty to reissue the invoices that contained Code x553.[119]

---

[115] *First State Orthopaedics, P.A.*, 2022 WL 18228287, at *10 (emphasis added).

[116] *Diebold Computer Leasing, Inc. v. Com. Credit Corp*., 267 A.2d 586, 591 (Del. 1970) ("[U]ltimate coercive relief would be injunctive.").

[117] Oral Argument at 32:12–33:20.

[118] Oral Argument at 35:02–35:20, 35:50–35:55.

[119] Oral Argument at 35:59–36:45.

And although it held that FSO had standing, the Superior Court's opinion reflects the non-redressability of FSO's past-conduct claim. In its opinion denying Liberty's Motion for Summary Judgment, the court acknowledged that FSO's "declaratory judgment claim is based on [Liberty's] general practice of sending [Explanations of Benefits] with Code x553 to patients, [while] [t]he claims it asserts as assignee are specific claims, arising from specific transactions."[120] The court was hesitant to award anything other than prospective relief, stating "injunctive relief is not necessary or warranted, as I am unwilling to punish [Liberty] for past conduct, particularly given their abandonment of the use of Code x553."[121] We are unable to reconcile that statement with the court's holding that the declaratory judgment it entered would redress the existing, uncorrected denials.

In summary, because the forward-looking relief that FSO sought—a declaratory judgment—would not redress the only existing or imminent injury it can point to—the previously submitted invoices—FSO lacked standing when it filed its Complaint.

---

[120] *First State Orthopaedics, P.A.*, 2022 WL 18228287, at *4.

[121] *Id*. During oral argument on the Motion for Summary Judgment, the Superior Court acknowledged that it did not have jurisdiction to enter an injunction. App. to Opening Br. at A1173 (Hearing on Summary Judgment) (The court: "I don't have any power to issue injunctions, at least it's very, very limited.").

## IV.  CONCLUSION

For the foregoing reasons, the Superior Court erred in denying Liberty's Motion for Summary judgment as to FSO's standing.  We therefore REVERSE the Superior Court's opinion.  Jurisdiction is not retained.